1  JOSEPH P. RUSSONIELLO (CSBN 44332)
   United States Attorney
2  JOANN M. SWANSON (CSBN 88143)
   Chief, Civil Division
3  MELANIE L. PROCTOR (CSBN 228971)
   Melanie.Proctor@usdoj.gov
4  Assistant United States Attorney

5      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
6      Telephone: (415) 436-6730
       FAX: (415) 436-7169
7
   Attorneys for Defendants
8

9                       UNITED STATES DISTRICT COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11                            SAN JOSE DIVISION

12
   BO HU,                              )   No. C 07-6163 JF (RS)
13                                     )
                    Plaintiff,         )
14                                     )
             v.                        )   GOVERNMENT'S RESPONSE TO
15                                     )   ORDER TO SHOW CAUSE
   MICHAEL CHERTOFF, Secretary of the  )
16 Department of Homeland Security; EMILIO )
   T. GONZALEZ, Director of the Citizenship )
17 and Immigration Services; ROBERT    )
   MUELLER, Director of the Federal Bureau )
18 of Investigation,                   )
                                       )
19                  Defendants.        )
                                       )

RESPONSE TO OSC
C 07-6163 JF

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

**I.     INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**II.    BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**III.   LEGAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.     ADJUSTMENT OF STATUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.     RELIEF AVAILABLE UNDER THE MANDAMUS ACT AND
           THE ADMINISTRATIVE PROCEDURE ACT . . . . . . . . . . . 4

**IV.    ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.     DEFENDANTS MUELLER SHOULD BE DISMISSED . . . . . . . . . . . . . . . . . . 5

    B.     THE COURT LACKS JURISDICTION TO COMPEL PROCESSING
           WITHIN A CERTAIN TIME FRAME . . . . . . . . 6

    C.     PLAINTIFF CANNOT ASSERT A CLAIM ON BEHALF OF HIS
           WIFE, NOR IS HER CLAIM RIPE FOR ADJUDICATION . . . . . . . . . . 7

    D.     PLAINTIFF CANNOT ESTABLISH THE EXISTENCE OF AN
           UNREASONABLE DELAY . . . . . . . . . . . . 8

        1.     Defendants' Process Is Governed By A Rule of Reason . . . . . . . . . . . . . 8

        2.     There Is No Congressionally Mandated Timetable . . . . . . . . . . . . . . . . . 8

        3.     Plaintiff Has Failed To Establish That The Delays Impact
                His Health or Welfare . . . . . . . . . . 9

        4.     Expediting Plaintiff's Name Check Would Have A Negative
                Effect on Agency Activities . . . . . . . . 10

        5.     Plaintiff Has Not Been Prejudiced By The Delay . . . . . . . . . . . . . . . . . . 11

        6.     Plaintiff Has Failed to Establish The Existence of
                Agency Impropriety . . . . . . . . . . . . . . . . . 11

**TABLE OF CONTENTS (continued)**

    E.    <u>PLAINTIFF'S CLAIM IS NOT CLEAR AND CERTAIN</u> . . . . . . . . . . . . . . . . 12

**V.**    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES
# FEDERAL CASES

Allied Chemical Corp. v. Daiflon, Inc.,
    449 U.S. 33 (1980) .................................................................................................. 5

Blankenship v. Sec'y of HEW,
    586 F.2d 329 (6th Cir. 1978) .................................................................................. 9

C.E. Pope Equity Trust v. United States,
    818 F.2d 696 (9th Cir. 1987) .................................................................................. 7

Califano v. Sanders,
    430 U.S. 99 (1977) .................................................................................................. 5

Cheney v. United States District Court for the District of Columbia,
    542 U.S. 367 (2004) ................................................................................................ 5

Dmitriev v. Chertoff,
    2007 WL 1319533 (N.D. Cal. May 4, 2007) ......................................................... 5

Eldeeb v. Chertoff, et al.,
    2007 WL 2209231 (M.D. Fla. July 30, 2007) .......................................... 4, 10, 11

FBI v. Abramson,
    456 U.S. 615 (1982) .............................................................................................. 10

Fu v. Gonzales,
    2007 WL 1742376 (N.D. Cal. May 22, 2007) ...................................................... 6

Heckler v. Ringer,
    466 U.S. 602 (1984) ............................................................................................ 5, 7

Kheiravar v. Chertoff,
    2007 U.S. Dist. LEXIS 35390 (S.D. Cal. May 14, 2007) ................................... 7

Kildare v. Saenz,
    325 F.3d 1078 (9th Cir. 2003) ..................................................................... 5, 7, 12

Konchitsky v. Chertoff,
    No. C-07-00294 RMW, 2007 WL 2070325 (N.D. Cal. July 13, 2007) ........ 5, 10

## FEDERAL CASES (continued)

Norton v. Southern Utah Wilderness Alliance,
    542 U.S. 55 (2004) ............................................................................................... 5

Mahdavi v. Chertoff,
    2007 WL 4747556 (S.D. Cal. Oct. 29, 2007) .................................................... 8, 9, 10, 11

Orkin v. Taylor,
    487 F.3d 734 (9th Cir. 2007) ............................................................................... 9

Quan v. Chertoff, Number,
    2007 WL 1655601 (N.D. Cal. June 7, 2007) ...................................................... 6

Razaq v. Poulos, Number C 06-2461 WDB,
    2007 WL 61884 (N.D. Cal. Jan. 8, 2007) ............................................................ 9

Rockbridge v. Lincoln,
    449 F.2d 567 (9th Cir. 1971) .............................................................................. 5

Singh v. Ilchert,
    784 F. Supp. 759 (N.D. Cal. 1992) .................................................................... 11

Skelly Oil Co. v. Phillips Petroleum Co.,
    339 U.S. 667 (1950) ............................................................................................ 5

Spencer Enterprises, Inc. v. United States,
    345 F.3d 683 (9th  Cir. 2003) ............................................................................. 6

Staacke v. U.S. Department of Labor,
    841 F.2d 278 (9th Cir. 1988) .............................................................................. 5

Sun v. Chertoff,
    2007 WL 2480315 (S.D. Cal. Aug. 27, 2007) ................................................... 7

Tang v. Chertoff,
    2007 WL 1650945 (N.D. Cal. June 5, 2007) ...................................................... 6 , 8

Telecommunication Research and Action Ctr. v. FCC,
    750 F.2d 70 (D.C. Cir. 1984) .............................................................................. 8, 11

Wright v. City of Roanoke Redevelopment and Housing,
    479 U.S. 418 (1987) ............................................................................................ 8

**FEDERAL CASES (continued)**

Yan v. Mueller,
    No. H-07-0313, 2007 WL 1521732 (S.D. Tex. May 24, 2007) .................................. 6, 10

Yu v. Chertoff,
    No. C06-7878 C, 2007 WL 1742850 (N.D. Cal. June 14, 2007) ...................................... 6

**FEDERAL STATUTES**

5 U.S.C. § 551(13) ................................................................................................................ 5

5 U.S.C. § 552(b)(7)] ........................................................................................................... 10

5 U.S.C. § 701, et seq .......................................................................................................... 4

5 U.S.C. § 701(a)(2) ............................................................................................................. 4

5 U.S.C. § 706(1) ................................................................................................................. 5

6 U.S.C. § 271(b) ............................................................................................................. 3, 5

6 U.S.C. § 271(b)(5) ............................................................................................................ 5

6 U.S.C. § 551(d) ................................................................................................................ 3

6 U.S.C. § 557 ..................................................................................................................... 5

8 U.S.C. § 1105(a) ............................................................................................................... 3

8 U.S.C. § 1252(a)(2)(B) ..................................................................................................... 6

8 U.S.C. § 1255 ................................................................................................................ 3, 7

8 U.S.C. § 1255(a) ........................................................................................................... 3, 7

8 U.S.C. § 1571 .................................................................................................................... 8

28 U.S.C. § 2201 .................................................................................................................. 5

Immigration Services and Infrastructure Improvements Act of 2000,
    Pub. L. No. 106-313, 114 Stat. 1251 ........................................................................... 9, 11

## RULES AND REGULATIONS

8 C.F.R. § 103.2(b)(7) ............................................................................................................... 6

8 C.F.R. § 103.2(b)(18) ............................................................................................................. 6

8 C.F.R. § 245.2 ........................................................................................................................ 6

8 C.F.R. § 245.2(a)(5)(i) ........................................................................................................... 6

8 C.F.R. § 245.5 ........................................................................................................................ 6

8 C.F.R.§ 245.6 ......................................................................................................................... 6

8 C.F.R. § 245 et seq ................................................................................................................. 3

JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
MELANIE L. PROCTOR (CSBN 228971)
Melanie.Proctor@usdoj.gov
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6730
    FAX: (415) 436-7169

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BO HU, | No. C 07-6163 JF (RS) |
|     Plaintiff, | |
| v. | GOVERNMENT'S RESPONSE TO ORDER TO SHOW CAUSE |
| MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; EMILIO T. GONZALEZ, Director of the Citizenship and Immigration Services; ROBERT MUELLER, Director of the Federal Bureau of Investigation, | |
|     Defendants. | |

## I. INTRODUCTION

Defendants hereby respectfully submit their response to the Court's Order to Show Cause why Plaintiff Bo Hu's ("Plaintiff") request for relief should not be granted. Plaintiff asks this Court to issue a writ of mandamus, compelling Defendants reach a decision on his application for adjustment of status. He also asks the Court to order Defendants to approve his application, as well as his wife's application. Plaintiff's claims must fail. Plaintiff's application remains pending because his name check is not yet complete. As the attached declaration of Michael Cannon demonstrates, there is good cause for the lengthy inquiry into Plaintiff's background. Accordingly,

RESPONSE TO OSC
C 07-6163 JF

Defendants respectfully ask this Court to deny Plaintiff the relief he seeks, and dismiss this action with prejudice.

## II.    BACKGROUND

On September 26, 2005, Plaintiff filed an I-485 application for adjustment of status. See Complaint, p. 2 ¶ 2; Declaration of Neil M. Jacobsen, p. 2 ¶ 3 (attached as Exh. A). Plaintiff's wife filed a concurrent application for derivative adjustment. Complaint, p. 2 ¶ 2; Exh. A, p. 2 ¶ 3. Plaintiff's application is based on his employment. Exh. A, p. 2 ¶ 4. Both Plaintiff's and his wife's name checks were submitted to the Federal Bureau of Investigation ("FBI") on September 30, 2005. Id., p. 8 ¶ 17. Plaintiff's application is ready to be adjudicated except for his pending background and security check Id., p. 4 ¶ 8. His wife's application is dependent upon his, and thus cannot be adjudicated until Plaintiff's application is resolved. Exh. A, p. 4 ¶ 8.

The FBI received Plaintiff's name check on October 7, 2005, and electronically checked Plaintiff's name against the FBI's Universal Index on the same date. See Declaration of Michael Cannon, p. 15 ¶ 41 (attached as Exh. B). That electronic check resulted in "hits," indicating a possible match with FBI records located in various FBI field offices and/or FBI headquarters. Id. A secondary manual search was conducted on March 29, 2006, after which Plaintiff's name still appeared to be associated with FBI records. Id. On October 26, 2006, the FBI conducted a preliminary manual file review to locate paper files and determine whether those files are germane to Plaintiff. Id. On the same date, his name check was sent to the final stage of the review process, the dissemination phase, where review and analysis of FBI files takes place. Id. The FBI conducted an additional name search of Plaintiff on February 20, 2007, to ensure that stale information was updated. Id. To date, Plaintiff's name check remains pending. Id. Plaintiff filed the instant Complaint on December 5, 2007.

///
///
///
///
///

## III.  LEGAL BACKGROUND

### A.  ADJUSTMENT OF STATUS

Section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255, authorizes the Secretary of the Department of Homeland Security ("Secretary")[1] to adjust to permanent residence status certain aliens who have been admitted into the United States. Adjustment of status is committed to the Secretary's discretion as a matter of law. Section 1255(a) expressly provides:

> The status of an alien who was inspected and admitted or paroled into the United States . . . <u>may</u> be adjusted by the [Secretary], <u>in his discretion</u> and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence[.]

8 U.S.C. 1255(a) (emphasis added). An applicant for adjustment of status must meet three requirements: he must apply for such status, be eligible to receive an immigrant visa, and the visa must be immediately available to him at the time he applies. <u>Id.</u> Significantly, the statute does not set forth any time frame in which a determination must be made on an application to adjust status. In addition, the regulations setting forth the procedures for aliens to apply to adjust status do not set forth a time frame for adjudication, and allow discretion in how to conduct the adjudication. <u>See</u> 8 C.F.R. § 245 <u>et seq</u>.

Before a decision is rendered on an alien's application to adjust status, U.S. Citizenship and Immigration Services ("USCIS") conducts several forms of security and background checks to ensure that the alien is eligible for the benefit sought and that she is not a risk to national security or public safety. <u>See</u> Exh. A, pp. 5-6 ¶ 10; Fact Sheet: Immigration Security Checks – How and Why the Process Works (April 25, 2006) (attached to Exh. A). USCIS also conducts investigations into the bona fides of petitions and applications that have been filed, in order to maintain the integrity of the application process and to ensure that there is no fraud in the application process. <u>See</u> 8 U.S.C. § 1105(a) (authorizing "direct and continuous liaison with the Directors of the [FBI]

---

[1] On March 1, 2003, the Department of Homeland Security and its United States Citizenship and Immigration Services assumed responsibility for the adjustment program. 6 U.S.C. § 271(b). The discretion formerly vested in the Attorney General is now vested in the Secretary of the Department of Homeland Security. 6 U.S.C. § 551(d).

RESPONSE TO OSC
C 07-6163 JF                                   3

and the Central Intelligence Agency and with other internal security officers of the Government for the purpose of obtaining and exchanging information for use in enforcing the provisions of this chapter in the interest of the internal and border security of the United States"). These checks currently include extensive checks of various law enforcement databases, including the FBI. See Exh. A, pp. 5-6 ¶ 10.

The FBI's name check process is quite complex. See Eldeeb v. Chertoff, et al., No. 07-cv-236-T, 2007 WL 2209231, at *4 (M.D. Fla. July 30, 2007); Exh. B, pp. 2-8 ¶¶ 4-20. Name checks are performed at the request of a variety of organizations, including the federal judiciary, friendly foreign police and intelligence agencies, and state and local governments. Eldeeb, 2007 WL 2209231, at *3. When the FBI conducts a name check, the name is checked against the FBI's Universal Index, in a four-stage process. Id. at *3. At each stage of the process, the FBI employs a first-in, first-served protocol. Exh. B, p. 8 ¶ 18. However, when an applicant's name check requires a review of numerous FBI records and files, the name check may require additional time until all responsive records are located and reviewed. Id. USCIS determines which name checks are to be expedited. See USCIS Clarifies Criteria to Expedite FBI Name Check (Feb. 20, 2007) (attached as Exh. C). An expedited name check proceeds to the front of the queue, in front of others awaiting processing. Eldeeb, 2007 WL 2209231, at *5.

The FBI processed more than 3.4 million name checks during fiscal year 2006. Id. at *3. The FBI is working as expeditiously as possible to reduce the small percentage of immigration name checks for which a backlog exists. This backlog results from the vast number of requests the FBI receives from USCIS and other customers, as well as the requirement for enhanced security measures existing since September 11, 2001. Id. at *5. A variety of factors play into processing times, including "hits," common names, and expedited name checks. Id. at *4; Exh. B, p. 10-12 ¶¶ 26-30.

      B.    RELIEF AVAILABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT AND THE MANDAMUS ACT

Judicial review under the APA, 5 U.S.C. § 701, et seq., is specifically precluded where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Agency action,

RESPONSE TO OSC
C 07-6163 JF                                        4

as defined under the APA, also includes "a failure to act." 5 U.S.C. § 551(13). Under 5 U.S.C. § 706(1), a court may compel "agency action unlawfully withheld or unreasonably delayed." The elements of a claim under § 706(1) are the existence of a discrete, ministerial duty; a delay in carrying out that duty; and a determination that the delay was unlawful or unreasonable in light of prejudice to one of the parties. Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004); Rockbridge v. Lincoln, 449 F.2d 567, 569-73 (9th Cir. 1971).

The APA does not provide an independent jurisdictional basis. Califano v. Sanders, 430 U.S. 99, 107 (1977); Staacke v. U.S. Department of Labor, 841 F.2d 278, 282 (9th Cir. 1988). Rather, it merely provides the standards for reviewing agency action once jurisdiction is otherwise established. Staacke, 841 F.2d at 282. Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), does not provide an independent basis for jurisdiction; rather, it only expands the range of remedies available in federal courts. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950).

Mandamus is an extraordinary remedy. See Cheney v. United States District Court for the District of Columbia, 542 U.S. 367, 392 (2004) (Stevens, J., concurring); Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980). The United States Supreme Court has stated that "[t]he common law writ of mandamus is intended to provide a remedy for a plaintiff only if . . . the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616 (1984); see also Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003).

## IV. ANALYSIS

### A. DEFENDANT MUELLER SHOULD BE DISMISSED

Courts in this district have recognized that since March 1, 2003, the Department of Homeland Security has been the agency responsible for implementing the Immigration and Nationality Act. See 6 U.S.C. §§ 271(b)(5), 557; Konchitsky v. Chertoff, No. C-07-00294 RMW, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007); Dmitriev v. Chertoff, No. C 06-7677 JW, 2007 WL 1319533, at *4 (N.D. Cal. May 4, 2007). Accordingly, Defendant Robert S. Mueller should be dismissed.

///

B.   THE COURT LACKS JURISDICTION TO COMPEL PROCESSING WITHIN A CERTAIN TIME FRAME

Defendants respectfully contend that the Court lacks jurisdiction to compel processing of Plaintiff's application with a certain time frame.[2] District courts that have concluded that the Mandamus Act vests the courts with subject matter jurisdiction have too firmly rested their analysis upon an inapplicable provision in 8 C.F.R. § 245.2(a)(5)(i). See, e.g., Yu v. Chertoff, No. C06-7878 CW, 2007 WL 1742850, at *2 (N.D. Cal. June 14, 2007) (finding that 8 C.F.R. § 245.2(a)(5) requires a decision); Quan v. Chertoff, No. C06-7881 SC, 2007 WL 1655601, at *3 (N.D. Cal. June 7, 2007) (same); Fu v. Gonzales, No. C07-0207 EDL, 2007 WL 1742376, at *3 n.2 (N.D. Cal. May 22, 2007) (same). The non-discretionary nature of § 245.2's notice requirement does not extend to the pre-adjudication processing of which Plaintiff here complains, a process that is statutorily defined as discretionary. 8 U.S.C. § 1252(a)(2)(B). The pre-adjudication investigation and processing are also discretionary beyond the language of the controlling statute.

The background investigation is discretionary as a matter of common sense. Yan v. Mueller, No. H-07-0313, 2007 WL 1521732, at *6 (S.D. Tex. May 24, 2007). Furthermore, the agencies must be able to make determinations in how to proceed with an investigation on a case-by-case basis, once enlightened by the information received at points along the investigative process. See e.g., 8 C.F.R.§ 245.6 (an "interview may be waived . . . when it is determined by the Service that an interview is unnecessary"); id. at § 103.2(b)(7) ("[The Service] may direct any necessary investigation") (emphasis added); id. at § 103.2(b)(18) ("A district director may authorize withholding adjudication"). The use of "may," in regulations that are more specifically addressed to the processing of adjustment applications than § 245.2's provision for final adjudication and the notice of such final agency determination, provides discretion to the manner of the processing of applications beyond that expressed in 8 U.S.C. § 1252(a)(2)(B). Thus, the process of adjudication is completely discretionary. See Spencer Enterprises, Inc. v. United States, 345 F.3d 683, 690 (9th

---

[2] Defendants acknowledge the Court's recent decision in Tang v. Chertoff, No. 07-0683 JF, 2007 WL 1650945 (N.D. Cal. June 5, 2007) (finding jurisdiction).

RESPONSE TO OSC
C 07-6163 JF                                      6

1 Cir. 2003). Accordingly, the Court lacks jurisdiction to compel USCIS to render a decision on Plaintiff's application within a certain timeframe.

Furthermore, mandamus is reserved for those situations in which the plaintiff's claim is clear and certain. Kildare, 325 F.3d at 1078. Here, as explained below, because Plaintiff has failed to establish that action on his application has been unreasonably delayed, he has failed to show that his claim is so clear and certain that mandamus is justified. USCIS has exercised its discretion in determining which name checks should be expedited. See Exh. C. Plaintiff's case meets none of these criteria.[3]

### C. PLAINTIFF CANNOT ASSERT A CLAIM ON BEHALF OF HIS WIFE, NOR IS HER CLAIM RIPE FOR ADJUDICATION

Plaintiff asks the Court to compel processing of his wife's application. However, as a pro se plaintiff, Plaintiff may not assert a claim on her behalf. C.E. Pope Equity Trust v. United States, 818 F.2d 696, 697 (9th Cir. 1987) ("Although a non-attorney may appear in propria persona in his own behalf, that privilege is personal to him. He has no authority to appear as an attorney for others than himself." (citations omitted)). Moreover, her claim is not ripe. Not only is her name check incomplete, but because her application is dependent upon his, it cannot be adjudicated. Exh. A, p. 4 ¶ 8. Thus, his wife's right to immediate adjudication is not "clear or certain." Moreover, because her application cannot be adjudicated until Plaintiff's application is decided, the delay in her case is eminently reasonable. See, e.g., Sun v. Chertoff, No. 07cv152 BTM, 2007 WL 2480315, at *2 (S.D. Cal. Aug. 27, 2007) (dismissing beneficiary's claim); Kheiravar v. Chertoff, No. 07cv0143 JM, 2007 U.S. Dist. LEXIS 35390, at *5 (S.D. Cal. May 14, 2007) (dismissing beneficiary's claim for lack of subject matter jurisdiction). Accordingly, the claims on behalf of Plaintiff's wife should be dismissed.

///

---

[3] Plaintiff asks the Court to compel Defendants to approve both his and his wife's applications; however, approval is clearly discretionary. 8 U.S.C. § 1255(a). Discretionary actions, such as decisions to expedite name checks, are beyond the reach of mandamus. Heckler, 466 U.S. at 616.

RESPONSE TO OSC
C 07-6163 JF                            7

**D.   PLAINTIFF CANNOT ESTABLISH THE EXISTENCE OF AN UNREASONABLE DELAY**

A review of the six factors set forth by Telecomm. Research and Action Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984), reveals that Plaintiff has failed to establish the existence of an unreasonable delay. The facts set forth above distinguish the case at hand from the cases finding an unreasonable delay. See Exh. B, p. 15-16 ¶ 41; contra Tang, 2007 WL 1650945, at *2 (finding that on a record which lacked "a particular explanation as to the cause of the delay," two years was unreasonable under the APA). Here, Defendants have offered a specific explanation for the delay: Plaintiff's name check involves a complex research process that is ongoing. Exh. B, p. 15-16 ¶ 41. Accordingly, his request for relief should be denied.

       1.   Defendants' Process Is Governed By A Rule of Reason

Defendants' process for evaluating I-485 applications is governed by a rule of reason because USCIS does everything it can to ensure that no eligible alien waits longer than reasonably necessary to receive a decision. Exh. A, p. 7 ¶ 13; see Mahdavi v. Chertoff, No. 06cv2716 DMS, 2007 WL 474556, at *2 (S.D. Cal. Oct. 29, 2007) (finding that the rule of reason is "the uncertain duration of the integral background checks."). Plaintiff posits that because his case has not yet been adjudicated, the delay is unreasonable. Complaint, p. 4. However, as set forth in the Jacobsen Declaration, the USCIS is monitoring this case on a weekly basis to identify it quickly when a response from the Federal Bureau of Investigation ("FBI") has been received. See Exh. A, pp. 9-10, 14 ¶¶ 21, 27. Moreover, USCIS has ensured that the background checks over which it has control are kept up-to-date. Id., p. 7 ¶ 14. Most importantly, as explained in the Cannon Declaration, Plaintiff's name check has entailed a lengthy research process of investigatory records. Exh. B, pp. 15-16 ¶ 41.

       2.   There is No Congressionally Mandated Timetable

Defendants acknowledge that 8 U.S.C. § 1571 expresses a "sense of Congress" that applications for immigration benefits should be processed within a certain time frame; however, the language is precatory and thus the statute is not a mandate. See Wright v. City of Roanoke Redevelopment and Housing, 479 U.S. 418, 432 (1987) (statute phrased in precatory terms does not

create a substantive right); Orkin v. Taylor, 487 F.3d 734, 739 (9th Cir. 2007) ("'Sense of Congress' provisions are precatory provisions, which do not in themselves create individual rights, or, for that matter, any enforceable law."). Furthermore, the statute was enacted in 2000, prior to the events of September 11, 2001. See American Competitiveness in the Twenty-First Century Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251 (enacted Oct. 17, 2000). Accordingly, it no longer provides a meaningful standard against which the Court can measure the delay at issue in this case. The events in the Fall of 2001 marked a dramatic shift in issues involving national security. Courts have taken note of this change:

> It is well known that since September of 2001, the FBI's resources have been sorely taxed by the demands that have been made on it by the Administration. Legitimate national security concerns, intensified by the sophistication of some of the threats to the lives of people in this country, have forced federal agencies to be considerably more careful and thorough in their investigations than they were in the past. In short, there was a lot more work for the FBI to do and it had to be done a lot more carefully.

Razaq v. Poulos, No. C 06-2461 WDB, 2007 WL 61884, at *12 (N.D. Cal. Jan. 8, 2007). Because there is no meaningful time frame against which the Court can measure the adjudication of Plaintiff's application, there is no timetable here. Mahdavi, 2007 WL 4747556, at *3.

### 3. Plaintiff Has Failed To Establish That The Delays Impact His Health or Welfare

Here, as in Mahdavi, Plaintiff has not presented any evidence that delays in processing negatively impact his health. Mahdavi, 2007 WL 4747556, at *3. In addition, he has not stated that he is unable to pay the fees for appropriate work and travel permits, or that the fees will render him destitute. Complaint, p. 3 ¶ 12; Mahdavi, 2007 WL 4747556, at *3 ("The context for this factor is grounding in Blankenship v. Sec'y of HEW, 586 F.2d 329, 334 (6th Cir. 1978)[,]" where the individuals seeking relief were destitute and seeking benefits for the necessities of human life). Plaintiff argues that he has delayed purchasing a house due to the delay in adjudication; however, he does not claim that he is without housing at all. He also claims his wife's education plans have been delayed; however, as explained above, he cannot assert claims on her behalf. As such, Plaintiff has failed to establish that the delay in adjudicating his adjustment application has impaired his health and human welfare. Mahdavi, 2007 WL 4747556, at *3.

RESPONSE TO OSC
C 07-6163 JF                                    9

      4.    Expediting Plaintiff's Name Check Would Have a Negative Effect on Agency Activities

The Court should decline to interfere with discretion of the FBI to set priorities for processing background checks. See, e.g., Konchitsky, 2007 WL 2070325, at *6-7 (stating "courts squarely addressing the issue of whether they have jurisdiction to compel the FBI to perform name checks . . . have overwhelmingly concluded that they do not."); Yan, 2007 WL 1521732, at *6 ("The evidence shows that the delay is due, not only to the volume of requests that the FBI receives, but also to the FBI's exercise of discretion in determining the timing for conducting the many name check requests that it receives and the manner in which to conduct those checks." (emphasis added)). Furthermore, as recognized by the district court in Eldeeb, the fact the majority of cases are processed within a lesser time frame "suggests that . . . the requests without results after six months are so because those particular Name Check requests require more time to investigate." Eldeeb, 2007 WL 2209231, at *5.

Indeed, as set forth in the Cannon Declaration, Plaintiff's name check falls squarely into this category of cases. Exh. B, pp. 15-16 ¶ 41. The FBI has been diligently processing Plaintiff's name check since the date it was received. Id. (setting forth benchmark dates for the processing of Plaintiff's name check). Because this process involves a review of investigatory records, Plaintiff is not entitled to know the particularized details of this, or any, law enforcement investigation. FBI v. Abramson, 456 U.S. 615, 631-32 (1982) (holding that "information initially contained in a record made for law enforcement purposes continues to meet the threshold requirements of [5 U.S.C. § 552(b)(7)] where that recorded information is reproduced or summarized in a new document prepared for a non-law-enforcement purpose.").

Thus, contrary to Plaintiff's contentions, Defendants are acting diligently in their efforts to complete adjudication in a timely manner. See Mahdavi, 2007 WL 474556, at *3 (finding that "Defendants are processing outstanding background checks as quickly as possible"). Accordingly, this factor weighs against granting the relief Plaintiff seeks. Mahdavi, 2007 WL 4747556, at *3 (finding that expediting the plaintiff's name check would result in no net gain, and applications of a higher or competing priority would be delayed).

### 5. Plaintiff Has Not Been Prejudiced By The Delay

As in <u>Mahdavi</u>, Plaintiff has offered little in the way of an explanation of how he is prejudiced by the delay in his case. He states only that he must pay additional filing fees in order to work and travel legally, and that he is unable to accrue time to apply for citizenship. <u>See</u> Complaint, p. 3 ¶ 10. Plaintiff has not articulated a reason why this interest should outweigh the Government's interest in a thorough and accurate background check. <u>See</u> <u>Mahdavi</u>, 2007 WL 4747556, at *3. In addition, Plaintiff is free to explore alternative employment. <u>See</u> American Competitiveness in the Twenty-First Century Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251 (permitting the alien work to adjust status based on employment other than with the company that filed the I-140 visa petition); Exh. A, p. 3 ¶ 6. Accordingly, Plaintiff has failed to establish that adjudication in his case has been unreasonably delayed.

### 6. Plaintiff Has Failed to Establish the Existence of Agency Impropriety

Plaintiff has offered no evidence of impropriety on the part of the agency. Here, as in <u>Mahdavi</u>, "the only impediment to adjudication of Plaintiff's application is the pending background check." <u>Mahdavi</u>, 2007 WL 4747556, at *4; Exh. A, p. 4 ¶ 8. Furthermore, Defendants will continue to update any necessary background and security checks to ensure that his case is completed as quickly as possible upon receipt of the name check. Exh. A, p. 7 ¶ 14. Plaintiff has failed to establish that adjudication in his case has been unreasonably delayed. <u>See</u> <u>Mahdavi</u>, 2007 WL 4747556, at *<u>4</u> (finding that after consideration of the six factors articulated in <u>Telecomm. Research and Action Ctr.</u>, 750 F.2d at 80, the plaintiff had failed to establish that adjudication was unreasonably delayed, and thus granting the Government's motion for summary judgment).

Plaintiff rests his arguments on a single fact: the passage of time. However, "[t]he passage of time alone is rarely enough to justify a court's intervention in the administrative process, especially since administrative efficiency is not a subject particularly suited to judicial intervention." <u>Singh v. Ilchert</u>, 784 F. Supp. 759, 765 (N.D. Cal. 1992); <u>see also</u> <u>Eldeeb</u>, 2007 WL 2209231, at *18 (finding that while the plaintiff had the right to have his application adjudicated, he "does not have a right to action on his application at a certain pace."). Plaintiff has failed to establish any facts that show the delay is unreasonable. Further, Defendants have established good cause for the delay in

1  processing Plaintiff's application.

   E.   PLAINTIFF'S CLAIM IS NOT CLEAR AND CERTAIN

Mandamus is reserved for those situations in which the plaintiff's claim is clear and certain. Kildare, 325 F.3d at 1078. Here, because Plaintiff has failed to establish that action on his application has been unreasonably delayed, he has failed to show that his claim is so clear and certain that mandamus is justified. Accordingly, Plaintiff's request for relief should be denied.

## V.  CONCLUSION

For the foregoing reasons, the Government respectfully asks the Court to deny Plaintiff's request for relief, and dismiss the action.

Dated: February 5, 2008                             Respectfully submitted,

                                                    JOSEPH P. RUSSONIELLO
                                                    United States Attorney


                                                         /s/
                                                    MELANIE L. PROCTOR
                                                    Assistant United States Attorney
                                                    Attorney for Defendants