FILED

2008 FEB 14  A 9:19

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

1  Bo Hu

2  1157 Pheasant Hill Drive

3  San Jose, CA 95120

4  (805)-705-8672

5

6  # UNITED STATES DISTRICT COURT

7  ## NORTHERN DISTRICT OF CALIFORNIA

8  ### SAN JOSE DIVISION

9

| | |
|---|---|
| 10  **Bo Hu** | )  Case No.: C 07-6163 JF (RS) |
| 11  **Plaintiff** | ) |
| 12  V. | ) |
| 13  **Michael Chertoff,** Secretary of U.S. | ) |
| 14  Department of Homeland Security; | )  **PLAINTIFF' BRIEF IN OPPOSITION TO** |
| 15  **Emilio T. Gonzalez,** Director of U.S. | )  **GOVERNMENT'S      RESPONSE      TO** |
| 16  Citizenship and Immigration Services; | )  **ORDER TO SHOW CASE** |
| 17  **Robert S. Muller,** Director of Federal | ) |
| 18  Bureau of Investigation | ) |
| 19  **Defendants** | ) |
| 20  | ) |
| 21  | ) |
| 22  | ) |

23

24

25

26

1

# TABLE OF CONTENTS

2  TABLE OF AUTHORITIES. .......................................................................................3

3  I. INTRODUCTION. ..............................................................................................5

4  II. FACTUAL BACKGROUND. ....................................................................................5

5  III. ARGUMENT. ..................................................................................................6

6  A. Defendant Mueller should not be dimissed...............................6

7  B. 8 U.S.C. §1252(a)(2)(B)(ii) and 8 U.S.C. §1255(a) do not strip this court

8  of jurisdiction...... .......................................................................7

9  C. Plaintiff agrees that he cannot assert a claim on half of his wife.....11

10  D. Plaintiff's assertion of an unreasonable delay in processing his

11  application is certain and clear. ...............................................11

12  IV. CONCLUSION. ...............................................................................................18

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF AUTHORITIES

**Cases**

*Agbemaple v. INS*, No. 97 C 8547, 1998 WL 292441 (N.D. Ill. May 18, 1998)..............13

*Ahmed v. DHS*, 328 F.3d 383 (7th Cir. 2003)...................................................11

*Alkenani v. Barrows*, 356 F.Supp.2d 652, 656 (N.D. Tex. 2005).....................11

*Alsharqawi v. Gonzales*, No. 3:06-CV-1165-N (N.D. Tex. March 14, 2007)....................9

*Ana International Inc. v. Way*, 393 F.3d 886, 892 (9th Cir. 2004)....................................10

*Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994)...........................................................7

*Cho v. Jarina*, No. 07-629, (E.D. La May 18, 2007)...........................................................11

*Duan v. Zamberry*, No. 06-1351, 2007 U.S. Dist. LEXIS 12697 (W.D. Pa. Feb. 23, 2007)9

*Elkhatib v. Bulger*, No. 04-22407, 2006 U.S. Dist. LEXIS 60485 (S.D. Fla. 2006).........17

*Elmalky v. Upchurch*, No. 06-CV-2359-B (N.D. Tex Mar. 28, 2007).........................8, 13

*Galvez v. Howerton*, 503 F. Supp.35, 39 (C.D. Cal. 1980)..............................................13

*Gelfer v. Chertoff*, No. 06-cv-06724-WHA, 2007 WL 902382 (N.D. Cal. Mar. 22, 2007)11, 13

*Haidari v. Frazier*, No. 06-3215, 2006 U.S. Dist. LEXIS 89177 (D. Minn. 2006)..........17

*He v. Chertoff*, No. CV 06-02608 (S.D. Cal. Mar. 8, 2007)..........................................9,11

*Huang v. Gonzales*, No. 07-00096 (W.D. Was May 2, 2007).........................................11

*Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002)..............................................................11

*Kim v. Ashcroft*, 340 F.Supp.2d 384, 393 (S.D.N.Y. 2004).........................................9, 12

*Linville v. Barrows*, Case No. 06-01430 (W.D. Ok 2006)................................................11

*Medina-Morales v. Ashcroft*, 371 F.3d 520, 528 (9th Cir. 2004)......................................10

*Oropeza-Wong v. Gonzales,* 406 F.3d 1135, 1142 (9th Cir. 2005)...................................10

*Paunescu v. INS*, 76 F.Supp.2d 896, 901 (N.D. Ill. 1999)..........................................11, 13

*Razaq v. Poulos*, No. 06-2461-WDB, 2007 WL 61884 (N.D. Cal. Jan. 8, 2007)............12

*Reyes v. U.S. Dep't of Homeland Sec.*, No. CV 06-6726 (C.D. Cal. April 16, 2007).........9

*Singh v. Still*, No. 06-2458, 2007 U.S. Dist. LEXIS 16334 (N.D. Cal. Jan. 8, 2007). 10, 13

*Spencer Enterprises, Inc. v. USA*, 345 F.3d 683, 691 (9th Cir. 2003)................................7

*Tjin-A-Tam* v. *U.S. Dep't of Homeland Sec.*, No. 05-23339-CIV, 2007 WL 781339 (S.D. Fla. Mar. 12, 2007).......................................................................................................11

*Valenzuela v. Kehl*, No. 05-1764, 2006 U.S. Dist. LEXIS 61054 (N.D. Tex. August 28, 2006) ................................................................................................................................12

*Wei v. Chertoff*, No. 06-02272 (N.D. Tex April 18, 2007)..................................................10

*Wu v. Chertoff*, No. 06-07880, 2007 U.S. Dist. LEXIS 33816 (N.D. Cal Apr. 25, 2007) 13

*Yu v. Brown*, 36 F.Supp.2d 922, 932 (D.N.M. 1999)............................................11, 12, 13

*Zemin Hu v. Reno*, No. CV 99-1136 BD, 2000 WL 425174 (N.D. Tex. Apr. 18, 2000)..11

*Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005)......................................................10

**Statutes**

28 U.S.C. §1361..................................................................................................................7

5 U.S.C. §555(b)..........................................................................................................6, 12, 13

5 U.S.C. §706(1)................................................................................................................16, 17

8 U.S.C. §1154(b)........................................................................................................8, 9, 10, 12

8 U.S.C. §1252(a)(2)(B)..................................................................................................7, 9, 10

8 U.S.C. §1255(a)..............................................................................................................7, 8

8 U.S.C. §1571(b)..................................................................................................................9

**Regulations**

8 C.F.R. §245.2(a)(5)(i)................................................................................................10, 12, 13

## I. INTRODUCTION

Plaintiff Bo Hu in the above-captioned case, by and through Pro Se, submits his Brief in Opposition to Government's Response to Order to Show Cause.

On the issue of subject matter jurisdiction challenged by Defendants, the Plaintiff will contend that this Honorable Court has original jurisdiction over this matter because the Plaintiff is seeking a mandamus action to compel Defendants to perform a *nondiscretionary* duty, which is to *adjudicate* the Plaintiff' I-485 application for permanent residency, which has been stalled due to excessive delays in the Name Check conducted by the Federal Bureau of Investigation (FBI). Defendants also argue in their Motion that the Plaintiff failed to establish the existence of an unreasonable delay upon which relief can be granted. The Plaintiff will show that taken together, the relevant statutes in the Immigration and Nationality Act (INA), the Code of Federal Regulations (CFR) and the Administrative Procedure Act (APA) establish a clear right for him to have his I-485 application adjudicated. The Plaintiff will contend that Defendants' delay in processing his application is indeed unreasonable, and Defendants, in unreasonably delaying action on the Plaintiff's application, are in violation of the APA. For these reasons, the Plaintiff requests that this Honorable Court deny Defendants' Motion to Dismiss.

## II. FACTUAL BACKGROUND

Plaintiff Bo Hu was born on 03/28/1975, in People's Republic of China. He first entered the U.S. in September, 1999, on a student visa to study in the Ph.D. program in Computer Engineering at University of California, Santa Barbara. After completing his Ph.D program. in 2004, he worked as staff Engineer at Velogix Inc., and then as Principal Engineer at Oasys Design Systems, Inc. In 2005, he filed an I-140 petition with the USCIS under the employment-based EB-1 category of outstanding researcher/professor. His application was endorsed by more than ten professors and research scientists from top US universities and approved by USCIS in September, 2005. After the I-140 was approved, the Plaintiff filed his and his wife's I-485

1  applications in September, 2005. Since then, the Plaintiff and his wife have been waiting for the

2  approval of their I-485 applications. In 2006, the Plaintiff tried to query the status of their

3  applications and was informed that their cases had been delayed because their name checks

4  conducted by the FBI had not been completed. After more than two years, the situation didn't

5  change. At the time of filing this Brief, the Plaintiff and his wife's applications have been

6  pending for over 27 months. Due to the delay, Plaintiffs have suffered various difficulties

7  personally, professionally, and financially. In addition to the difficulties listed in the Complaint,

8  the Plaintiff has not been able to travel abroad to provide on-site support for his employer's

9  Japanese customers because of the recently excessive 4-month processing time of their Advance

10 Parole applications. In addition, the Plaintiff's entrepreneur activities have been greatly

11 compromised. There is no way for the Plaintiff to found his own company while maintaining

12 legal status. Hence, on December 5, 2007, the Plaintiff filed the instant Complaint seeking

13 mandamus relief from the Court.

14

15 **III. ARGUMENT**

16

17 **A. Defendant Mueller should not be dismissed**

18       The Administrative Procedure Act (APA) requires the federal agencies to act upon

19 matters presented to them within a reasonable time. The APA provides:

20       "(b) . . . With due regard for the convenience and necessity of the parties or their

21       representatives, and within a reasonable time, each agency shall proceed to

22       conclude a matter presented to it."

23 5 U.S.C. §555(b). Although only the USCIS is the agency that adjudicates I-485 applications,

24 when it contracts out part of the processing work of security and background checks to the FBI,

25 the FBI's duty is subsumed under that of the USCIS. The APA thus requires both of them to

26

complete their investigations in a timely manner in order for USCIS to perform its adjudication duty within a reasonable time.

## B. 8 U.S.C. §1252(a)(2)(B)(ii) and 8 U.S.C. §1255(a) do not strip this court of jurisdiction

The district courts are vested with jurisdiction to compel administrative agencies to discharge a duty under the Mandamus Act. That statute, codified at 28 U.S.C. §1361, provides:

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

28 U.S.C. §1361. Mandamus remedy is proper if "1) the plaintiff's claim is clear and certain; 2) the defendant official's duty to act is non-discretionary, ministerial, and so plainly prescribed as to be free from doubt; and 3) no other adequate remedy is available." *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994).

In their Motion, Defendants argue that the court lacks jurisdiction to compel processing within a certain time frame. They state:

"The non-discretionary nature of § 245.2's notice requirement does not extend to the pre-adjudication processing of which Plaintiff here complains, a process that is statutorily defined as discretionary. § 8 U.S.C. §1252(a)(2)(B). The pre-adjudication investigation and processing are also discretionary beyond the language of the controlling statue "[1]

On the contrary, the Plaintiff contends that the whole process of adjudicating I-485 applications is not under the Attorney General's complete discretion. The Ninth Circuit has construed 8 U.S.C. §1252(a)(2)(B)(ii) as requiring the discretionary authority for an action to be *specified* in order for it to apply. See *Spencer Enterprises, Inc. v. USA*, 345 F.3d 683, 691 (9th Cir. 2003). However, nowhere in 8 U.S.C. §1255(a) is the authority for the process of adjudicating I-485

---

[1] Defendants' "Government's Response to Order to Show Cause", at 6

applications *specified* to be under the Attorney General's discretion. See *Elmalky v. Upchurch*, No. 06-CV-2359-B *9 (N.D. Tex Mar. 28, 2007) ("[8 U.S.C.] §1255(a) does not **specifically commit the 'process' of adjusting an applicant's status to the Attorney General**").

On the other hand, the phrase "may be adjusted" in 8 U.S.C. §1255(a) refers only to the final decision and not to the processing of adjustment of status (I-485) applications. An adjustment of status petition framed by 8 U.S.C. §1255 is, in essence, a petition for immigrant status defined in 8 U.S.C. §1154. It is important to note that the statute, 8 U.S.C. §1255, was enacted in 1960 so that aliens eligible for adjustment of status already residing in the U.S. would not be required to leave the country and apply to a U.S. consul in order to obtain permanent resident status. Hence Congress's intent there was probably to make it easier, not harder, procedurally for aliens already residing in the U.S. to receive immigrant status. Given that the only substantial difference between adjustment of status applications and the immigrant visa ones is the location of an applicant, it is difficult to believe that Congress intended to establish different procedures between these two types of petitions.

Historically, 8 U.S.C. §1255 was enacted after 8 U.S.C. §1154, and thus it would be proper to confer with 8 U.S.C. §1154 regarding the details missing in 8 U.S.C. §1255. That statue provides:

"b) Investigation; consultation; approval; authorization to grant preference status

After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under section 1153(b)(2) or 1153(b)(3) of this title, the Attorney General *shall*, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title, or is eligible for preference under subsection (a) or (b) of section 1153 of this

1   title, approve the petition and forward one copy thereof to the Department of

2   State. The Secretary of State *shall* then authorize the consular officer concerned

3   to grant the preference status."

4   8 U.S.C. §1154(b) (Emphases added). Because of the word "*shall*" in this statute, the federal

5   agencies have a nondiscretionary duty to process a petition for an immigrant visa as well as a

6   petition for adjustment of status. The discretion vested in the Attorney General by the Congress

7   is thus to grant or deny an adjustment of status petition only after processing is complete, not

8   whether to process it. Certainly, Congress did not give the Attorney General the full discretion to

9   indefinitely delay a properly filed petition for adjustment of status; on the contrary, it clearly

10  expressed its intent in 8 U.S.C. §1571(b):

11  "It is the sense of Congress that the processing of an immigration benefit

12  application should be completed not later than 180 days after the initial filing of

13  the application ....,"

14  reaffirming that indefinitely delaying processing of properly filed applications could not have

15  been the intended purpose of Congress when it passed the statutes. See *Alsharqawi v. Gonzales*,

16  No. 3:06-CV-1165-N (N.D. Tex. March 14, 2007) (holding that 8 U.S.C. §1154(b) "appears to

17  mandate action, i.e., adjudicating applications"); *He v. Chertoff*, No. CV 06-02608, at *7 (S.D.

18  Cal. Mar. 8, 2007) ("It is unlikely Congress intended a situation where an alien would submit an

19  application and the CIS would effectively decline to complete processing the application")

20  (citing *Kim v. Ashcroft*, 340 F.Supp.2d 384, 393 (S.D.N.Y. 2004)). See also  *v. U.S. Dep't of*

21  *Homeland Sec.*, No. CV 06-6726, at *8 (C.D. Cal. April 16, 2007) ("the Attorney General is *not*

22  *vested with complete discretion* in deciding whether to process petitioner's I-485 application; as

23  a result, subsection [§1252(a)(2)(B)] (ii) - which by its express terms applies only to those

24  actions that lie in the discretion of the Attorney General - *does not divest the court of*

25  *jurisdiction*.") (emphases added); *Duan v. Zamberry*, No. 06-1351, 2007 U.S. Dist. LEXIS

26  12697 (W.D. Pa. Feb. 23, 2007) (finding that 8 U.S.C. §1252(a)(2)(B)(ii) does not apply because

1   the pace of the adjudication of applications is not the type of discretionary action contemplated

2   by the statute); *Wei v. Chertoff*, No. 06-02272 (N.D. Tex April 18, 2007) (citing *Zhao v.*

3   *Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005)).

4   Moreover, the Ninth Circuit has held that 8 U.S.C. §1252(a)(2)(B)(ii) "applies only to

5   acts over which a statute gives the Attorney General pure discretion unguided by legal standards

6   or statutory guidelines." *Oropeza-Wong v. Gonzales*, 406 F.3d 1135, 1142 (9th Cir. 2005) (citing

7   *Medina-Morales v. Ashcroft*, 371 F.3d 520, 528 (9th Cir. 2004)). See also *Oropeza-Wong v.*

8   *Gonzales*, 406 F.3d at 1142 (8 U.S.C. §1252(a)(2)(B) inapplicable if "there are legal and factual

9   questions that are not subject to the pure discretion of the [agency]."); *Ana International Inc. v.*

10  *Way*, 393 F.3d 886, 892 (9th Cir. 2004) ("if the statutory provision granting the Attorney

11  General power to make a given decision also sets out specific standards governing that decision,

12  the decision is not "in the discretion of the Attorney General'"). As explained above, the duty of

13  adjudicating immigrant visa petitions as well as I-485 applications is prescribed by 8 U.S.C.

14  §1154(b). In addition, Part 245 of the Code of Federal Regulations provides:

15      "(5) Decision — (i) General. The applicant *shall* be notified of the decision of the

16      director and, if the application is denied, the reasons for the denial."

17  8 C.F.R. §245.2(a)(5)(i) (emphasis added). Again, since the term "shall" is mandatory, this

18  regulation also creates a nondiscretionary duty of the agencies to adjudicate I-485 applications.

19  Given the existence of these provisions, the adjudication process is not under the Attorney

20  General's "pure jurisdiction unguided by legal standards or statutory guidelines" and thus 8

21  U.S.C. §1252(a)(2)(B)(ii) does not apply.

22      In summary, because the Plaintiff is seeking a mandamus action to compel Defendants to

23  perform a nondiscretionary duty, which is to adjudicate the Plaintiff' I-485 applications, 8 U.S.C.

24  §1252(a)(2)(B)(ii) does not deprive this Court of jurisdiction over the Plaintiff' claims. Indeed,

25  numerous district courts have found jurisdiction over mandamus claims of unreasonably delayed

26  adjustment of status and immigrant visa applications. See, e.g., *Singh v. Still*, No. 06-2458, 2007

U.S. Dist. LEXIS 16334 (N.D. Cal. Jan. 8, 2007) ("[T]here is a difference between the [USCIS's] discretion over *how* to resolve an application and the [USCIS's] discretion over *whether* it resolves an application.") (emphases added); *He v. Chertoff*, No. CV 06-02608, at *7 (S.D. Cal. Mar. 8, 2007); *Gelfer v. Chertoff*, No. 06-cv-06724-WHA, 2007 WL 902382 (N.D. Cal. Mar. 22, 2007); *Huang v. Gonzales*, No. 07-00096 (W.D. Was May 2, 2007); *Tjin-A-Tam v. U.S. Dep't of Homeland Sec.*, No. 05-23339-CIV, 2007 WL 781339, *3 (S.D. Fla. Mar. 12, 2007); *Cho v. Jarina*, No. 07-629, (E.D. La May 18, 2007) (citing *Linville v. Barrows*, Case No. 06-01430 (W.D. Ok 2006)); *Zemin Hu v. Reno*, No. CV 99-1136 BD, 2000 WL 425174 (N.D. Tex. Apr. 18, 2000); *Paunescu v. INS*, 76 F.Supp.2d 896, 901 (N.D. Ill. 1999); *Yu v. Brown*, 36 F.Supp.2d at 931 (D.N.M. 1999) ("The fact that INS has discretion in the ultimate decision whether to grant LPR [(Lawful Permanent Resident)] status is simply irrelevant to the question of whether it has discretion to refuse to act on Plaintiffs' applications.").

**C. The plaintiff agrees that he cannot assert a claim on behalf of his wife.**

**D. Plaintiff's assertion of an unreasonable delay in processing his application is certain and clear**

In Defendants' assertion that "Plaintiff cannot establish the existence of an unreasonable delay"[2], Defendants argue that "Defendants' process is governed by a rule of reason"[3] and "There is no congressionally mandated timetable". In addition, Defendants also assert that "Plaintiff has failed to establish the existence of agency impropriety"[4]. As a matter of fact, many courts have found that the Immigration and Nationality Act establishes a clear right to relief for adjustment of status applicants. See *Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002) (affirmed in *Ahmed v. DHS*, 328 F.3d 383 (7th Cir. 2003)); *Paunescu v. INS*, 76 F.Supp.2d 896, 901 (N.D. Ill.

[2] Defendants' "Government's Response to Order to Show Cause", at 8

[3] Id., at 8

[4] Id., at 8

1  1999); *Yu v. Brown*, 36 F. Supp.2d 922, 932 (D.N.M. 1999). Further, even though the ultimate

2  decision to grant or deny an I-485 application is committed to the Attorney General's discretion,

3  8 U.S.C. §1154(b) and 8 C.F.R. §245.2(a)(5)(i) clearly prescribe a nondiscretionary duty of the

4  federal agencies to render a decision. If there were absolutely no time constraint on when

5  applications have to be adjudicated, Defendants would have the absolute "power to decide

6  whether it would decide." *Razaq v. Poulos*, No. 06-2461-WDB, 2007 WL 61884, at *4 (N.D.

7  Cal. Jan. 8, 2007) See *Id.* ("Congress had to have intended the executive branch to complete

8  these 'adjudications' within a reasonable time – because imposing no time constraint at all on the

9  executive branch would be tantamount to giving the government the power to decide whether it

10  would decide ... A 'duty to decide' becomes no duty at all if it is accompanied by unchecked

11  power to decide when to decide."); *Yu v. Brown*, 36 F. Supp.2d 922, 932 (D.N.M. 1999) ("[B]y

12  necessary implication the adjudication must occur within a reasonable time. A contrary position

13  would permit the INS to delay indefinitely. Congress could not have intended to authorize

14  potentially interminable delays.").

15      Therefore, when the statute fails to specify temporal limitations, the Administrative

16  Procedure Act (APA) requires the federal agencies to act upon matters presented to them "within

17  a reasonable time." The APA provides:

18      "(b) . . . With due regard for the convenience and necessity of the parties or their

19      representatives, and *within a reasonable time*, each agency shall proceed to

20      conclude a matter presented to it."

21  5 U.S.C. §555(b) (emphasis added). As a matter of fact, a majority of courts have held that the

22  APA does impose such a time requirement on processing permanent residence applications. See

23  *Kim v. Ashcroft*, 340 F.Supp.2d 384, 393 (S.D.N.Y. 2004) ("Whether to *adjudicate* an

24  adjustment application is not discretionary, but governed by section 6 of the APA, requiring the

25  CIS to take action on a matter presented to it 'within a reasonable time.'") (emphasis original);

26  *v. Kehl*, No. 05-1764, 2006 U.S. Dist. LEXIS 61054 (N.D. Tex. August 28, 2006) ("Many

1   courts, including the United States District Court for the Northern District of Texas, have held in
2   immigration cases that petitioners and applicants have a clear right to have their adjustment
3   applications and visa petitions adjudicated within a reasonable time of their filing.") (citing
4   *Alkenani v. Barrows*, 356 F.Supp.2d 652, 656 (N.D. Tex. 2005); *Elmalky v. Upchurch*, No. 06-
5   CV-2359-B (N.D. Tex Mar. 28, 2007); *Paunescu v. INS*, 76 F.Supp.2d 896, 901 (N.D. Ill. 1999);
6   **Yu v. Brown, 36 F. Supp.2d 922, 932 (D.N.M. 1999) (holding that INS "owe[s]**
7   **Plaintiffs a non-discretionary duty to complete processing of Plaintiffs' [LPR]**
8   **applications in a reasonable time.");** *Gelfer v. Chertoff*, No. 06-cv-06724-WHA, 2007
9   WL 902382 (N.D. Cal. Mar. 22, 2007) ("Allowing the respondents a limitless amount of time to
10  adjudicate petitioner's application would be contrary to the 'reasonable time' frame mandated
11  under 5 U.S.C. 555(b) and, ultimately, could negate the USCIS's duty under 8 C.F.R.
12  245.2(a)(5)") (citing *Singh v. Still*, No. 06-2458, 2007 U.S. Dist. LEXIS 16334 (N.D. Cal. Jan. 8,
13  2007)); *Wu v. Chertoff*, No. 06-07880, 2007 U.S. Dist. LEXIS 33816 (N.D. Cal Apr. 25, 2007);
14  *Agbemaple v. INS*, No. 97 C 8547, 1998 WL 292441 (N.D. Ill. May 18, 1998). Although only the
15  USCIS is the agency that adjudicates I-485 applications, when it contracts out part of the
16  processing work of security and background checks to the FBI, the FBI's duty is subsumed
17  under that of the USCIS. The APA thus requires both of them to complete their investigations in
18  a timely manner in order for USCIS to perform its adjudication duty within a reasonable time.

19          Even though there are no statutory or regulatory standards to determine the Plaintiff' 27-
20  months' waiting time as unreasonable, many courts have found similar delays in adjustment of
21  status applications to be. See *Song v. Klapakas*, No. 06-05589, 2007 U.S. Dist. LEXIS 27203
22  (E.D. Pa. April 12, 2007) (finding a nearly two-year delay unreasonable); *Galvez v. Howerton*,
23  503 F. Supp.35, 39 (C.D. Cal. 1980) (holding a six-month delay as unreasonable); *Paunescu v.*
24  *INS*, 76 F.Supp.2d 896, at 901-902 (N.D. Ill. 1999) (holding a ten-month delay as unreasonable);
25  *Yu v. Brown*, 36 F.Supp.2d 922, 932 (D.N.M. 1999) (holding a two-and-a-half year delay as
26  unreasonable). The Citizenship Promotion Act of 2007 (S. 795) recently introduced on the

1    Senate floor would, in fact, require the Attorney General to make reasonable efforts to complete

2    background checks of applicants for temporary or permanent residence or citizenship within 90

3    days.

4         Defendants also assert that "Plaintiff has failed to establish that the delay impact his

5    health or welfare"[5] and "Plaintiff has not been prejudiced by the delay"[6]. In fact, the plaintiff and

6    his wife have been anxiously waiting for the approval of their I-485 applications for more than

7    two years. It is the common sense that a person's health will be greatly impaired if he is under

8    anxiety for a long time. Because of the pending applications, they delayed the plan of purchasing

9    a house and the schedule to raise a family. Moreover, it is not true as in Defendants' assertion

10   that "Plaintiff is free to explore alternative employment". As a matter of fact, Plaintiff cannot

11   change job as freely as he wants. He has to have a job which assumes responsibilities the same or

12   similar to the one he had before. For example, he may not work in well-known internet company

13   Google Inc. as it is not a job with similar responsibilities to what he has now. Furthermore, the

14   Plaintiff is well-known in academia and industry for his advanced research on compute-aided

15   design algorithms. He has published numerous technical papers on prestigious conferences and

16   journals. In fact, the Plaintiff's immigration petition as outstanding researcher was endorsed by

17   more than ten professors and scientists from top universities (**Exhibit A – Recommendation**

18   **letters on half of the Plaintiff in support of his immigration petition**). In 2005, the plaintiff

19   won the 2nd place award in international competition on VLSI (Very Large-Scale Integrated

20   circuits) placement algorithm contest (**Exhibit B – Award Certificate**). From then on, the

21   plaintiff has been preparing to found his own company and launch his advanced computer-aided

22   design technology in the industry. Unfortunately, because of his pending I-485 status, he cannot

23   found his own company. As a result, the plaintiff's career development has been greatly

24   jeopardized.

25

26

---

[5]Defendants' "Government's Response to Order to Show Cause", at 9

[6]Id., at 11

1   In contrast to Defendants' assertion, the plaintiff contends that expediting the plaintiff's
2   name check would not have a negative effect on agency activities. According to the Fact Sheet
3   Defendants submitted regarding the processing of name check, "Of the remaining 20 percent,
4   most are resolved within six months. Less than one percent of requests remain pending longer
5   than six months."[7] While over two years have passed and the Plaintiff and his wife are still
6   waiting for their name check to be cleared and applications adjudicated, the USCIS Nebraska
7   Service Center has started processing I-485 applications filed at least 20 months after Plaintiffs'
8   filing date and the FBI has started clearing those names. If all Plaintiffs are seeking expeditious
9   processing of their already delayed name checks after the FBI has failed to complete them in the
10  past two years, their pursuit of this action simply cannot constitute an attempt to "cut in line." If
11  Plaintiffs fall within the less than one percent of those who have suffered over-two-year-long
12  delays, it should be well within the USCIS and FBI's control to expedite their name checks.
13  Considering the minute number of similarly delayed applicants, granting the relief for Plaintiffs
14  would not "open the flood gates for immigration-related mandamus actions."

15  If the USCIS and FBI actually processed all the requests in the order they are received
16  and gave every case a fair share of their time, the current situation that the USCIS and FBI
17  continue to delay Plaintiffs' two year old applications while processing newer applications
18  would not have occurred. Without any substantial evidence from Defendants that would prove
19  otherwise, it seems Plaintiffs' applications have been stalled for a long time and the agencies,
20  instead of making any reasonable efforts to resolve them, have simply ignored them altogether.

21  By no means is the Plaintiff implying that the name check process is not needed or not
22  useful in protecting the national security and ensuring the integrity of the immigration process.
23  Likewise, in no way does the Plaintiff take the security of the U.S. and the safety of the
24  American people lightly by filing his Complaint. The Plaintiff is not asking the Court to short-
25  circuit the name check process, which he also believes is necessary. After all, the Plaintiff has

26  _____
[7] Fact Sheet: Immigration Security Checks – How and Why the Process Works, at 2

1   been residing in this country and have been benefiting from its security and prosperity for the

2   past eight and half years. However, the USCIS does have problems with a fraction of security,

3   name and background checks, and those problems arise from the inefficiencies within the system

4   rather than national security threats. On page 24 of the document entitled "A Review of U.S.

5   Citizenship and Immigration Services Alien Security Checks" **(Exhibit C – Excerpt of DHS**

6   **OIG Report)**, the authors state the following:

7           "USCIS has established structure for handling cases with security check hits and

8           addressing national security, public safety and fraud concerns. *However, for a*

9           *fraction of cases, slow, inconclusive or legally inapplicable security check result*

10          *can cause application processing to stall for months or even years.* These delays

11          can interfere with USCIS' concluding national security and public safety hits with

12          timely denials or referrals to law enforcement. In addition, stalled cases decrease

13          operational efficiency by decreasing productivity and contributing to hundreds of

14          lawsuits against USCIS."

15  DHS Office of Inspector General, *A Review of U.S. Citizenship and Immigration Services' Alien*

16  *Security     Checks*,     OIG-06-06,     November     2005,     *available     at*

17  http://www.dhs.gov/xoig/assets/mgmtrpts/OIG_06-06_Nov05.pdf (emphasis added). Plaintiffs

18  believe that they have been victims of such inefficiencies within the system and they ask the

19  Court to restore some fairness and accountability to the process by denying Defendants' Motion

20  to Dismiss.

21          When Defendants have unreasonably delayed action on Plaintiffs' applications to their

22  detriment, the APA statute, 5 U.S.C. §706(1), authorizes the Court to order a remedy. That

23  statute provides:

24          "To the extent necessary to decision and when presented, the reviewing court

25          shall decide all relevant questions of law, interpret constitutional and statutory

26

provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall –

(1) compel agency action *unlawfully withheld* or *unreasonably delayed* ..."

5 U.S.C. §706(1) (emphases added). Although courts may not mandate approval of I-485 applications, many have found it proper to compel adjudication within a specific period of time. See, e.g., *Song v. Klapakas*, No. 06-05589, 2007 U.S. Dist. LEXIS 27203 (E.D. Pa. April 12, 2007) (ordering the USCIS to adjudicate Plaintiffs' applications within 30 days); *Elkhatib v. Bulger*, No. 04-22407, 2006 U.S. Dist. LEXIS 60485 (S.D. Fla. 2006) (setting a specific timetable for federal agencies to complete the adjudication by); *Haidari v. Frazier*, No. 06-3215, 2006 U.S. Dist. LEXIS 89177 (D. Minn. 2006) (ordering the USCIS to complete its adjudication of the plaintiffs' Adjustment of Status application within 30 days and inform the court of its decisions while maintaining jurisdiction over the case to ensure that USCIS complied with the order).

1  ## IV. CONCLUSION

2  　　　The plaintiff concedes that this Honorable Court may not have jurisdiction over agency's

3  final decision whether or not to approve the Plaintiff's application, and the plaintiff may not

4  assert a claim on behalf of his wife.  However, for the reasons explained above, this Honorable

5  Court clearly have jurisdiction to compel processing within a reasonable time frame. The

6  plaintiff also establishes the fact that his application has been unreasonably delayed for more

7  than two years and his family's welfare (traveling, career development, financial wellness, etc.)

8  is indeed in jeopardy.  Consequently, the Plaintiff respectfully request that the Court deny

9  Defendants' Motion to Dismiss. Should the Court decide to remand this case to the USCIS and

10  FBI, Plaintiffs request that the Court order the USCIS to make an expedite request with the FBI

11  immediately and maintain jurisdiction over this case to ensure the agencies complete their

12  investigations and adjudicate the Plaintiff's applications within a reasonable time.

13

14  　　　Dated: February 14, 2008

15  　　　　　　　　　　　　　　　　　　　　　Respectfully Submitted,

16

17

18  　　　　　　　　　　　　　　　　　　　　　Dr. Bo Hu

19  　　　　　　　　　　　　　　　　　　　　　PRO SE

20  　　　　　　　　　　　　　　　　　　　　　1157 Pheasant Hill Drive

21  　　　　　　　　　　　　　　　　　　　　　San Jose, CA 95120

22  　　　　　　　　　　　　　　　　　　　　　(805)-705-8672

23  　　　　　　　　　　　　　　　　　　　　　hu@oasys-ds.com

24

25

26

# EXHIBIT A

Recommendation letters:

[1] Malgorzata Marek-Sadowska, Professor, University of California, Santa Barbara.
[2] Sudip Nag, Ph.D. Vice President, Velogix Inc.
[3] Jason Cong, Professor, University of California, Los Angeles.
[4] Andreas Kuehlmann, Cadence Fellow, Director, Cadence Laboratories.
[5] Kwang-Ting Cheng, Professor, University of California, Santa Barbara.
[6] Forrest Brewer, Professor, University of California, Santa Barbara.
[7] Sachin S. Sapatnekar, Professor, University of Minnesota.
[8] Kaushik Roy, Professor, Purdue University.
[9] Igor Markov, Assistant Professor, University of Michigan.
[10] David Z. Pan, Assistant Professor, University of Texas, Austin.
[11] John Lillis, Associate Professor, University of Illinois.
[12] Patrick H. Madden, Associate Professor, Binghamton University.

UNIVERSITY OF CALIFORNIA, SANTA BARBARA

BERKELEY · DAVIS · IRVINE · LOS ANGELES · MERCED · RIVERSIDE · SAN DIEGO · SAN FRANCISCO  SANTA BARBARA · SANTA CRUZ

COMPUTER ENGINEERING PROGRAM                         SANTA BARBARA, CALIFORNIA 93106-9560

December 20, 2004

To Whom It May Concern:

This letter is being written in support of the employment-based-preference petition filed on behalf of Bo Hu, Ph.D., for an Outstanding Researcher Immigrant Visa. Dr. Hu is exceptionally well qualified for the permanent research position offered to him by Flexlogics, a highly visible startup company in the semiconductor industry. Dr. Hu's outstanding abilities as a researcher in the field of semiconductor system design methodologies, specifically in the area of logic and physical synthesis, will be of enormous value to Flexlogics and will also contribute to the growing body of knowledge in the science and technology of semiconductors.

I have known Mr. Hu since September 1999 when he came to Santa Barbara as a new graduate student in Computer Engineering. At the end of his first year, he had narrowed his interests to the general area concerned with technical problems arising from the combining of the software and semiconductor chip design technologies. Since his interests coincided with the general profile of my own laboratory, he joined my research group and went on to earn his Ph.D. degree in March 2004.

First, I will write a few sentences about my qualifications and experience to justify that I am qualified to write such letter of recommendation.

I have had over 25 years of experience in computer engineering. I earned my Ph.D. in Electrical Engineering from Technical University of Warsaw, Poland, an internationally reputed seat of learning and research. Since obtaining my doctorate, I have taught at Technical University of Warsaw and the University of California, Berkeley. Since 1990 I have been with the University of California, Santa Barbara, where I am a full professor. I have published extensively in many areas of CAD (Computer-Aided Design) for VLSI (Very Large Scale Integration). I have been invited to be a member of numerous technical committees for internationally reputed conferences -- for example, ICCAD and DAC. I have been associated with the editorial board of *IEEE Transactions on Computer-Aided Design of Integrated Circuits and Systems*, the premier journal of VLSI CAD. I was an associate editor for 4 years and later became Editor-In-Chief. I have also served as an Associate Editor for the *Journal of Circuits, Systems, and Computers*. I am an IEEE Fellow. Considering my

1

extensive experience and interaction with top quality researchers, I can confidently say that I am qualified to judge the ability of a researcher compared to others in the same field.

Throughout the time Dr. Hu was at UC Santa Barbara, my laboratory was supported by grants from the National Science Foundation, the Semiconductor Research Consortium, the State of California MICRO, the Defense Advanced Research Projects Agency (DARPA), the Microelectronic Advanced Research Corporation (MARCO), and various commercial semiconductor and software companies, such as Conexent, Synopsys, Mentor Graphics, Xilinx, LSI Logic, Arcadia, Silicon Valley Research, Actel, AT&T, Cadence, and others. The research in my laboratory focuses upon developing software tools to increase quality and productivity in semiconductor chip design, generally referred as "integrated circuits design automation" or "computer-aided design." We deal with a number of deep, arcane technical problems in designing high quality computer chips and systems. One of these, physical cell placement, was chosen by Mr. Hu as a topic for his research.

While in my research lab at UCSB, Dr. Hu played a key role in the development of new algorithms for mapping and placement for very large scale integrated circuits. A major component of his work was an innovative use of Rent's rule to predict and control routability.

Dr. Hu's early research focused on analytic global placers for semiconductor circuits. His major contribution was a placement technique based on Fixed-points Addition and Relaxation (FAR). Dr. Hu proposed a novel concept of fixed points (which are pseudo-cells connected to movable cells) to maintain the placed cells in a force equilibrium state, and to systematically transform one state into another equilibrium state. By relaxing some of the previously introduced fixed points, it is possible to reposition the cells, or incrementally perturb the existing good solution to fulfill additional requirements. His method achieved 50% CPU speedup time and total wire length comparable to that achieved by the classical method of constant forces.

Dr. Hu made important contributions to addressing routability at the placement level. As one of the traditional placement objectives, routing congestion minimization has been researched for more than a decade. A placement with good routability not only saves time spent on routing, it also correlates the timing estimation at the placement stage with the end result after routing, causing routing to avoid unnecessary detours. The importance of good routability is more evident in deep sub-micron technology where interconnects dominate the performance, and often the area, of a VLSI circuit. Dr. Hu developed a new congestion minimization technique for the fixed-die standard cell global placement. The most distinct feature of this technique is that it does not follow the traditional "estimate-then-eliminate" strategy. Instead, it avoids excessive usage of routing resources by the "local" nets so that more routing resources are available for the uncertain "global" nets. Experimental results show that the new placer, SPARSE, achieves better routability than do the existing total-wire-length minimizing techniques. In addition, SPARSE is capable of allocating white space implicitly.

In 2003, at the Design Automation Conference (which is the premier forum for design automation research), the paper written by Dr. Hu was nominated for the *Best Paper Award*.

2

In this paper he proposed a technology mapping technique based on the logical effort theory. Experimental results showed that the gain-based mapping algorithm achieved reduction in delay within a smaller area, as compared to the existing mappers.

Dr. Hu developed the *Fast Placement Implementation* framework which allows for speeding-up any placement algorithm. The main contributions of this work are: (1) introduction of the fine-granularity clustering technique and its application to placement; (2) derivation of a new, *contraction* metric to evaluate the proximity of elements connected in the netlist and demonstration of its applicability in fine granularity clustering; (3) building a placer implementation framework and experimentally verifying its effectiveness in improving the efficiency of an existing placers.

After receiving his Ph.D. at UCSB, Dr. Hu joined Flexlogics, Inc., a vibrant startup company, as a Software Engineer. In this capacity, he is continuing to make significant advances in developing algorithms for physical synthesis for programmable devices. His research is improving the performance/area and low-power envelope for reconfigurable devices. Potentially, this research could enable us to use these devices for such diverse applications as biomedical instruments and space satellites.

With all these accomplishments, Dr. Hu has established himself as one of the leading researchers in the field. His work not only contributes significantly to scientific theory and practice, but also enhances commercial value and sharpens the competition within the industry. Underlying his research are his outstanding analytical skills, creativity, originality, strong drive, and intellectual integrity. I believe he will continue to forge progress in logical and physical synthesis for cutting-edge VLSI designs. Dr. Hu will most certainly generate, implement, and disseminate important new ideas, as he has done in the past. His background clearly qualifies him as an outstanding researcher.

It is on the basis of the above assessments that I enthusiastically recommend Dr. Hu as a scientist of exceptional merit and ability who has made and will continue to make excellent contributions to the field of Computer Aided Design.

Sincerely,

Malgorzata Marek-Sadowska
Professor of Electrical and Computer Engineering



2901 Tasman Drive - Suite 211
Santa Clara, CA   95054
Phone:   408-850-2800
Fax:        408-850-2801
http://www.flexlogics.com

January 5, 2005

To: Immigration and Naturalization Service
     Department of Homeland Security

RE: Recommendation for Dr. Bo Hu's petition for Permanent Residency.

Dear Sir/Madam:

It is my pleasure to write a recommendation letter for Dr. Bo Hu. To begin with let me briefly introduce myself. I completed my MS and PhD from Carnegie Mellon University in 1995 in the area of Placement and Routing. Prior to that, I worked for 3 years at Texas Instruments. From 1995 to 2003 I worked at Xilinx Inc. I left Xilinx as Director of Placement and Routing group, to join a startup in the area of PLDs. Currently I am the VP of engineering at Flexlogics Inc. . I have over 20 publications and 20 patents in the areas of placement, routing, timing, DSP synthesis, and FPGA architectures. I served as session chair for a few IEEE conferences, provided tutorials, and have been in some thesis committees.

I have known Dr. Hu for the last 2 years, initially through his presentations at conferences and since April 2004 as a key member of my team at Flexlogics. It took Dr. Hu just a week to understand our existing Synthesis, place and route system. Almost immediately he started working aggressively towards transforming key areas of the system to improve performance and runtime of our tool. This process required clarity of thought and significant innovation. I was truly amazed at Dr. Hu's strength in both those areas. Within 4 months of his joining, we had a system that was faster and producing significant (almost 2X in come cases) performance improvement. Dr. Hu is one of the few experts in the area of analytical placement. He has published numerous papers in this area, and combined it with new concepts (like super clustering) while at Flexlogics, to make our placer the fastest and best in FPGA industry. Beyond that he helped develop the idea of automatic data-path detection and display (a first in our industry). Most recently he is focusing on incremental design. Dr. Hu is playing a huge role in devising a solution that is easy to use and predictable. Within two months of starting the project we will have a much better solution that our competition, and they have spent over 3 years on this problem! Dr. Hu surprised us all with his amazing ability to learn fast, and pick key

Immigrations Letter Recommendation - Bo Hu
January 5, 2005
Page 2

concepts very quickly. He shows rare maturity in understanding the big picture, and using it to solve the right or most important problem, thereby increasing his efficiency.
The Flexlogics team is an exceptionally talented team; however Dr. Hu excels even within that high performing team.

Dr. Hu is a prolific researcher. He has published numerous papers at prestigious conferences, and is in the process of filing several patents at Flexlogics. His research work spans a large domain, including synthesis, mapping, wire and delay modeling, placement and routing areas. What stands out in his research career is his nomination for best paper in DAC 2003. DAC is one of two most premier conferences in the CAD area. Publishing a paper in these conferences itself is very hard. Getting nominated for best paper is a huge honor that less than 5% of top researchers get.

Based on my close interaction with Dr. Hu over this year, I have no hesitation in stating that he is one of the finest researchers I have come across. He is exceptionally sharp, always looking for new ways for improving the state-of-the-art, and amazingly hard-working. He excels in environments where he is pursuing a challenge. Dr.Hu is the kind of person who pushes so hard that he positively influences others around him to also get motivated. He brings a lot of energy to the group.

I very much support his immigrant visa petition as an outstanding researcher, and truly believe he deserves it.

If you should have any questions, please do not hesitate to call me at (408) 850-2800 ext. 107.

Sincerely,

*Sudip kr. Nag, Jan 5, 2005*

Sudip Nag, Ph.D.,
VP Engineering

UNIVERSITY OF CALIFORNIA, LOS ANGELES                              UCLA

BERKELEY · DAVIS · IRVINE · LOS ANGELES · RIVERSIDE · SAN DIEGO · SAN FRANCISCO        SANTA BARBARA · SANTA CRUZ

DEPARTMENT OF COMPUTER SCIENCES
4732 BOELTER HALL, BOX 951596
LOS ANGELES, CA 90095-1596

PHONE: (310) 825-8878

15 December 2004

To:    Immigration and Naturalization Service
       Department of Homeland Security

Re:    Recommendation for Dr. Bo Hu's Petition for Permanent Residency.


Dear Sir/Madam:

       This letter is offered on behalf of Bo Hu, Ph.D., and in connection with the petition on
his behalf to the Immigration and Naturalization Service for classification as an "Outstanding
Researcher."

       I believe I am qualified to comment on the qualifications of Dr. Hu. I am a professor and
co-director of the VLSI CAD Laboratory in the Computer Science Department of the University
of California, Los Angeles. My research interests include physical and logic synthesis for high-
performance low-power VLSI circuits, design and optimization of high-speed VLSI interconnects,
and design, synthesis, and compilation for programmable and reconfigurable architectures. I have
published over 180 research papers and led over 30 research projects in these areas. I served as the
general chair of the 1993 ACM/SIGDA Physical Design Workshop, the program chair and general
chair of the 1997 and 1998 International Symposium on FPGAs, program co-chair of the 1999
International Symposium on Low-Power Electronics and Designs, program co-chair of
ASPDAC'2003, and on program committees of many major conferences, including DAC, ICCAD,
and ISCAS. I am an associate editor of *ACM Transactions on Design Automation of Electronic
Systems*. I received the Best Graduate Award from Peking University in 1985 and the Ross J.
Martin Award for Excellence in Research from the University of Illinois at Urbana-Champaign in
1989. I received the NSF Young Investigator Award in 1993, the Northrop Outstanding Junior
Faculty Research Award from UCLA in 1993, the IEEE Transactions on CAD Best Paper Award in
1995 from IEEE CAS Society, and the ACM and SIGDA Meritorious Service Award in 1998. I
received an SRC Inventor Recognition Award in 2000 and, in that same year, the SRC Technical
Excellence Award. I was elected to an IEEE Fellow in 2000.

       I have known Dr. Hu for almost four years, since he first participated a project meeting
supported by GigaScale Research Center (GSRC, http://www.gigascale.org). With the continued
exponential growth in the maximum complexity of individual integrated circuits and the relentless
competitive pressures of time-to-market and product quality, the efficient use of semiconductor
technology represents one of the most challenging problems the world has ever faced. The
mission of GSRC is to fully engage all the fundamental problems associated with making gigascale
silicon technology economically available to designers. The tasks are extremely difficult and
require a broad collaboration among multiple universities. Among the projects supported by GSRC,
*Constructive Fabric* is the one that focuses on the ability to create robust circuit components

from hierarchical combinations of hard, soft and newly specified circuits during system assembly. This project includes a dozen outstanding researchers from four top U.S. universities: UC Berkeley, UC Los Angeles, UC Santa Barbara, and Carnegie Mellon University. Dr. Hu is one of these top researchers. Beginning with the year 2000, I've met Dr. Hu in almost all GSRC meetings. These meetings are held to facilitate discussions among the researchers in GSRC concerning the challenging problems encountered. I was impressed by Dr. Hu's sharp technical insights, fruitful innovative ideas, and effective solutions for difficult problems. In this project, Dr. Hu proposed an innovative gain-based programmable fabric family. Each fabric in this family is tuned for the best performance for a one-application domain. Dr. Hu also proposed an efficient design flow to work with the new fabrics. Due to its technical novelty and potentially huge commercial value, Dr. Hu was invited to present his work at the International Symposium on Physical Design, 2003.

Dr. Hu has been technically innovative, not only on the programmable fabric front, but also in large-scale VLSI physical design and logic synthesis. Physical design and logic synthesis are two extremely critical components in the area of electronic design automation (EDA). Logic synthesis is a process transforming an electronic design, such as a microprocessor, into an optimized circuit form for physical implementation on a semiconductor; physical design is to lay out the circuit physically for manufacturing. These two processes are important to determine the overall chip performance, power consumption and manufacturability. In this field, Dr. Hu has made a significant impact by proposing a variety of interesting algorithms. His algorithms address the prominent problems that the design automation industry is facing, and they have a strong impact. For example, he proposed a fixed-point addition placement technique in ISPD 2002. His work on gain-based technology mapping for discrete-size libraries is so highly innovative that it was nominated for the Best Paper Award in the 2003 Design Automation Conference, the most prestigious conference in the EDA field.

After he completed his Ph.D., Dr. Hu continued his innovative work at Flexlogics Inc. Flexlogics Inc. is a semiconductor company building next-generation programmable chips. It is the consensus of both academia and the semiconductor industry that the programmable chip is the future of the semiconductor industry. Given his accomplishments, I support Dr. Bo Hu's application for permanent residency under the category of "Outstanding Researcher." Please feel free to contact me if you have any additional questions regarding this recommendation.

Sincerely,

Jason Cong
Professor of Computer Science
Co-director, VLSI CAD Laboratory



Tuesday, November 16, 2004

Dear Sir or Madam:

This letter is offered on behalf of Bo Hu, Ph.D., and in connection with the petition on his behalf to the Immigration and Naturalization Service for classification as an "Outstanding Researcher." It is a pleasure for me to write a supporting letter for Dr. Bo Hu as an expert in the field of computer aided design of integrated circuits.

I am the Director of the Cadence Laboratories, the research organization of Cadence Design Systems. Cadence Design Systems is the world leader in semiconductor design software supplies and engineering services. I am also an Adjunct Professor at the University of California at Berkeley. I received the Dipl.-Ing. degree and the Dr.-Ing. habil degree in Electrical Engineering from the University of Technology at Ilmenau, Germany, in 1986 and 1990, respectively. After graduation, from 1990 to 1991, I worked at the Fraunhofer Institute of Microelectronic Circuits and Systems, Duisburg, on a project to automatically synthesize embedded microcontrollers. In 1991 I joined the IBM T.J. Watson Research Center where I worked until June 2000 on various projects in high-level and logic synthesis and hardware formal verification. In July 2000 I joined the Cadence Berkeley Laboratories where I continue to work on synthesis and verification problems.

Dr. Hu's accomplishments attest to his outstanding abilities in the field of Electrical and Computer Engineering, and particularly, in the research and development of advanced design tools for logic optimization and physical layout of VLSI circuits.

I came to know Dr. Hu in 2002 when he worked as a summer intern at our laboratory. Although I have not worked directly with him, I would like to comment on a conference paper outlining the results of that summer work. The paper was published in the Design Automation Conference 2003, which is one of the leading technical conferences in our field with a highly competitive selection procedure. The conference accepts typically between 20 and 25% of the submitted papers. Not only was Dr. Hu's paper accepted for publication, it was also nominated as one of the candidates to receive a Best Paper Award of that conference for the year 2003. Although in the second review stage the paper was not selected, the nomination attests for its high quality in terms of innovation and results. In summary, the paper describes an innovative technique to make one of the most important steps in automatic logic optimization, namely technology mapping, more effective. By using a "gain-based" approach, the method is able to abstract away the detailed timing of a library of predesigned circuit components and as a result consolidate the number of candidates that need to be considered during the selection process. Due to the resulting reduction in cases to be considered, more choices can be evaluated which in turns yields better results.

As mentioned before, I have not worked with Dr. Hu directly and can only provide my opinion about this particular research. However, in my opinion the paper published at the Design Automation Conference is of outstanding quality which attests the high qualification of Dr. Hu.
Moreover, the overall unusually high number of papers published by Dr. Hu while pursuing his Ph.D. shows his high motivation, broad skill set, and strong ability to innovate.

Very truly yours,

Dr.-Ing. habil Andreas Kuehlmann
Cadence Fellow
Director, Cadence Laboratories

# UNIVERSITY OF CALIFORNIA, SANTA BARBARA

BERKELEY · DAVIS · IRVINE · LOS ANGELES · MERCED · RIVERSIDE · SAN DIEGO · SAN FRANCISCO



SANTA BARBARA · SANTA CRUZ

COMPUTER ENGINEERING PROGRAM

SANTA BARBARA, CALIFORNIA 93106-9560

To:    U. S. Department of Homeland Security,
       Immigration and Naturalization Service

Date:  December 7, 2004

Dear Officers:

This letter is offered in support of Dr. Bo Hu's petition for Permanent Residency in the United States of America under the Outstanding Researcher category.

I am qualified to evaluate the work and potential of Bo Hu through my professional training, broad experience, and deep involvement in research and publishing in my field. I received a B.S. degree in Electrical Engineering from the National Taiwan University in 1983 and a Ph.D. degree in Electrical Engineering and Computer Science from the University of California, Berkeley in 1988.

I worked at AT&T Bell Laboratories from 1988 to 1993, then joined the faculty at the University of California, Santa Barbara in 1993, where I developed the Computer Engineering Program. I currently serve as a Professor of Electrical and Computer Engineering. My areas of expertise include VLSI testing, design analysis and synthesis, and design verification. I have worked closely for many years with US government agencies on projects within these areas. I have co-authored three books and over 100 journal articles, have presented papers and invited talks at many national and international conferences, and I hold eight U.S. patents. I have served on the Editorial Boards of *IEEE Trans. on Computer-Aided Design*, *IEEE Design and Test of Computers* and *Journal of Electronic Testing*. I have also been General Chair and Program Chair of the IEEE International Test Synthesis Workshop.

I've known Dr. Hu for many years since he came to attend the University of California, Santa Barbara. He was my teaching assistant for my digital design class. He first came to my attention because of his unusually strong motivation to conduct research on logic synthesis, one of the most challenging areas in Electronic Design Automation. He even published a paper at the Design Automation and Test conference in Europe (DATE) based on the work he had done in a class project. In this work, he proposed a novel power optimization algorithm based on functional symmetries in a circuit. I was very impressed, since at that time he was still at an early stage of his Ph.D. studies. My research interest in logic synthesis and automatic test pattern generation enabled me to appreciate the value of his algorithm. We had many interesting and fruitful discussions afterwards. Later, I became a member of his doctoral committee.

Dr. Hu's Ph.D. thesis, titled "Multilevel VLSI Placement for Deep Sub-Micron Technology," made many important contributions to research. Primarily, his thesis addressed VLSI (Very Large-Scale Integrated circuits) placement, one of the most important problems in automated design flow. As semiconductor technology scales into deep sub-micron regimes, the integration of billons of transistors is becoming essential for electronic system designers. The design of such a complex system must be aided by efficient placement algorithms to produce high-performance, feasible physical implementation. In his thesis, Dr. Hu first proposed a fine-granularity clustering technique to improve

the performance of existing placement technologies. The unique feature of this method is its applicability to all existing placement algorithms. As a result, it has been applied widely in various academic and industrial placer implementations. Secondly, he proposed a generalized quadratic placement formulation and successfully resolved the stability issue in the previous formulation. His formulation was implemented in an industrial context, where it has proven to be very effective. To address the design routability and timing closure problems, he developed a comprehensive placement migration method. This method intelligently distributes the existing white space in the design such that it minimizes routing congestion and improves design performance. It is worth mentioning that Dr. Hu's thesis also addresses placement predictability. Especially interesting is his proposal for a multi-level placement flow capable of producing predictable results. The implication of this innovative work is huge since it could significantly shorten the time spent on timing closure. For complex designs, it could save months of development time. Dr. Hu's works have been published at highly selective conferences, such as ACM/IEEE Design Automation Conference, International Conference on Computer-Aided Design, and International Symposium on Physical Design. He has gained attention from worldwide researchers and is already recognized as one of the leading research specialists in this field.

Due to the rapid advance of semiconductor technology and the expanding demand for sophisticated, intelligent electronic systems, the developing of effective automated design systems holds a keen interest for the United States' semiconductor industry. I believe Dr. Hu's work is highly valuable for maintaining a competitive edge in the American semiconductor industry. Considering Dr. Hu's outstanding research achievements in this field, I have no reservation whatsoever in strongly supporting his immigrant visa petition.

Sincerely,

Kwang-Ting Cheng
Professor of Electrical and Computer Engineering

# UNIVERSITY OF CALIFORNIA, SANTA BARBARA



BERKELEY · DAVIS · IRVINE · LOS ANGELES · RIVERSIDE · SAN DIEGO · SAN FRANCISCO      SANTA BARBARA · SANTA CRUZ

SANTA BARBARA, CALIFORNIA   93106

Dear Sirs,

I write this letter in support of Dr. Bo Hu's application for resident status in the United States. I have known Dr. Hu for 5 years, since he came to UCSB in the area of Design Automation. Bo was a student of my colleague, Prof. Margaret Marek-Sadowska, and is some ways was one of her best. He was given the difficult problem of reducing the effects of wire congestion on modern VLSI chips. At the time, this was a relatively well known problem with nearly no practical solutions and had been an open problem for several years. To put the problem in perspective a modern large scale design has several kilometers of wire compressed into 10-14 layers in a chip 1 centimeter on a side. Congestion refers to those parts of the chip in which all available spaces for wires have been used-- rendering portions of the design inaccessible. Such issues cause the design size, power requirements and cost to rise while simultaneously reducing the performance.

Prof. Sadowska mentioned to me that she thought she had a practical solution for the problem which startled me as I (and many others) did not expect progress in that area. Further, Bo had developed a mechanism to reduce wire congestion without resorting to pre-wiring or route estimation which had been tried, but are computational expensive. This work lead to his ICCAD 2002 paper which open more than a few eyes. Bo's trick was to use Rent parameter estimation to determine appropriate a priori placement expansion in key areas of the design.

This work has been followed up by extensions for wirelength estimation and more interestingly, connected to function mapping techniques as a means of merging logic synthesis and routing problems. This work shows Bo's flexibility, as he has produced critically acclaimed research in both physical design and in logic synthesis areas. He has continued a level of publication which is commensurate of a high quality junior faculty member while working at a startup company. That company, by the way, is one of the more interesting CAD startup firms and Bo is a key technical contributor. Flexlogic was founded by former students of Prof. Sadowska and myself and is practically the only successful startup in that area in the United States.

Overall, Bo's work has been both novel and practical. He is likely to become a technical leader in his field and it is definitely in the interest of the United States to grant him permanent residency.

Forrest Brewer, ECE Department
University of California, Santa Barbara

Prof. Brewer is a Professor in the Electrical and Computer Engineering Department of the University of California, Santa Barbara. He was co-inventor of the technology behind Synopsys Protocol Compiler and has been a VLSI system design consultant for several companies including Intel, Chameleon Systems, Synopsys, and Lucent Technologies. His areas of research are high-level, logical and physical design automation as well as VLSI design technology.

Prof. Forrest Brewer forrest@ece.ucsb.edu ECE/UCSB 805-729-1410

# UNIVERSITY OF MINNESOTA

*Twin Cities Campus*          ***Department of Electrical and Computer***          *4-174 EE/CSci Building*
                              ***Engineering***                                    *200 Union Street S.E.*
                              *Institute of Technology*                            *Minneapolis, MN 55455-0160*
                                                                                   *Office: 612-625-3300*

December 20, 2004

Immigration Officer
Immigration and Naturalization Service
Department of Justice

RE: Recommendation for Dr. Bo Hu's Petition for an Immigration Green Card

Dear Sir/Madam:

I am writing this letter to support the permanent residency petition being submitted on behalf of Bo Hu, Ph.D., under the "Outstanding Researcher" Category.

I render my opinion as an expert in the field of computer-aided design (CAD) for very large scale integrated (VLSI) circuits. My background is as follows. After receiving my Ph.D. degree from University of Illinois at Urbana-Champaign in 1992, I was an assistant professor in the Department of Electrical and Computer Engineering at Iowa State University from 1992 to 1997. Since then, I have been at the University of Minnesota, where I am currently a Professor in the Department of Electrical and Computer Engineering, and hold the Robert and Marjorie Henle Chair. I am a recipient of the National Science Foundation (NSF) Career Award, four Best Paper awards at prominent conferences in my field and the Semiconductor Research Corporation (SRC) Technical Excellence Award. I am a Fellow of the Institute of Electrical and Electronics Engineers (IEEE). I have published more than 125 journal and conference papers and five academic books, and have authored several book chapters in the area of circuit layout and optimization. Besides, I have served as an Associate Editor for several IEEE journals, and as a member of the program committee for several conferences, including as the general chair of the IEEE/ACM Tau Workshop in 2000, and the ACM International Symposium on Physical Design in 2002. A copy of my resume is attached herewith.

I know of Dr. Hu's work since his research is in a similar area as mine. I have read several of his publications and interacted with him at conferences. The first time I met Dr's Hu in person was at 40th Design Automation Conference (DAC), where his paper, "Gain-based technology mapping for discrete-size libraries," was nominated for the Best Paper Award. DAC is the premier conference in the area of electronic design automation (for example, last year, fewer than 20% of all submitted papers were accepted) and a handful of the accepted papers are nominated for the Best Paper award. Therefore, such a nomination is highly selective and prestigious and shows a high level of achievement on the part of Dr. Hu. His paper is related to the development of techniques for technology mapping, a critical step in the automated VLSI circuit design flow, where a desired circuit functionality is implemented using a library of precharacterized cells. This step is becoming more complex in advanced technologies since the number of cells in a library has had to increase dramatically to achieve the stringent specifications that must be met on high-performance designs. As a result, the number of ways implementing the circuit using the cells increases exponentially, and it is imperative to develop an efficient method to search for the best possible implementation. Dr. Hu proposed a way to build a coarser representation of the library and thus significantly reduce the number of solutions considered during the solution searching. His

technique is capable of searching a larger solution space than conventional methods, and achieved much better results compared to the previous state-of-the-art. I have been on the leading-edge technology mapping research front for a long time, and I can certainly say that this is a very novel and significant contribution. To emphasize the impact of his work, I should add that Dr. Hu's research has played a significant role in making gain-based methods more widely-accepted in technology mapping: for example, subsequent to Dr. Hu's publication, my research group was motivated to look at the gain-based paradigm, and presented a paper on technology mapping at the International Conference on Computer-Aided Design (ICCAD) this year.

Dr. Hu is also technically very active in the area of VLSI physical design, and he has performed ground-breaking work in the area of VLSI placement. His achievements in this area range from handling real-life problems, such as dealing with blockages, to incorporating interconnect predictability, to considering issues related to placement migration, and handling incremental placement. With this range of work, he has firmly established himself as one of the leading placement researchers in the world.

Dr. Hu's excellence is reflected by his exceptional achievements: within a very short period of time, he has published more than 10 papers on this topic including 3 papers published in the premier journal, the IEEE Transactions on Computer Aided Design. As a result, he is widely recognized as an expert in the area of physical design. He has been involved in the reviewing process in top conferences in this field, such as DAC and ICCAD. His expertise is broadly recognized: for example, he was invited to present his research on programmable fabrics at the International Symposium on Physical Design (ISPD) in 2003. I have attended some of his conference presentations, and I can testify to the fact that his capability of conveying his original ideas in front of worldwide audiences is excellent.

Due to his rare expertise, his versatility, and his ability to tackle difficult problems in the field of design automation, he has research job offers at three different companies (Quicklogic Inc. 2000, Verplex Systems Corp. 2001, Cadence Design Systems Corp. 2002) during his Ph.D. study. Upon his completion of Ph.D. degree, he was offered researcher positions by 5 different companies including the leading design automation software provider, Synopsys Inc., and the leading programmable fabric provider, Xilinx Inc..

In summary, Dr. Hu has proposed a number of innovative approaches and made a significant impact on the field of electronic design automation. In order to maintain its worldwide leader position in the electronic design automation industry, it is important for the United States to have an excellent researcher like Dr. Hu, and therefore, I strongly recommend that he be granted permanent residency status in the United States.

Sachin S Sapatnekar
Robert and Marjorie Henle Professor
Department of Electrical and Computer Engineering
University of Minnesota
Email: sachin@ece.umn.edu
Ph: (612) 625 0025



SCHOOL OF ELECTRICAL AND
COMPUTER ENGINEERING

DECEMBER 14, 2004

To:     Immigration and Naturalization Service
        Department of Homeland Security

Re:     Recommendation for Dr. Bo Hu's petition for Permanent Residency.

Dear Sir/Madam:

I am writing this letter to support the immigrant visa petition of Flexlogics Inc. on behalf of Dr. Bo Hu. Dr. Hu has made significant research contributions to the field of Electronic Design Automation (EDA) as described below.

I believe I am qualified to comment on the qualifications of Dr. Hu. I am a Professor in the ECE department of Purdue University, West Lafayette and hold a University Faculty Scholar position. My research has been in the area of VLSI circuit design, CAD, scaled CMOS devices and architecture. Our research group received several best paper awards. I received the NSF CAREER award, IBM Faculty award, ATT/Lucent Foundation award, and I am a Fellow of IEEE.

I first met Dr. Hu about three years ago at the Design Automation conference when he was working on physical design. I found his very interesting. I raised a couple of questions regarding his work and was impressed by his insightful thoughts and clarity of concepts.

Since then, as Dr. Hu became more actively involved in Electronic Design Automation, I have had more opportunities to get to know him. The major research topic Dr. Hu focuses on is physical design for large-scale VLSI designs. The challenge in this research area is that interconnects between functional modules at very-deep sub-micron technology are highly unpredictable. As a result, wrong decisions are frequently made at early design stages and designers encounter a hard time to fulfill design objectives such as timing. Dr. Hu pioneered an innovative design flow in his Ph.D. thesis. The new flow differs the conventional approach in that it is able to produce predictable interconnects. The implication of his innovation is that a lot of wrong decisions can be avoided and consequently a high-quality design can be automatically obtained. This is extremely useful to improve the design productivity in the semiconductor industry.

Immigration and Naturalization Service                    December 14, 2004
Department of Homeland Security
Page 2

Dr. Hu's exceptional research capability is also demonstrated by his fruitful technical innovations. He proposed a breakthrough method to minimize congestion during physical design. The novelty of his method is the elimination of congestion estimation, which is in general inaccurate. He invented an accurate measurement to predict interconnect length before layout; He devised a novel clustering algorithm to greatly enhance the efficiency of existing placement algorithm.

Dr. Hu is an outstanding multi-disciplined researcher. He has been actively researching not only in physical design field, but also in logic synthesis area. He published more than ten technical papers at top conferences. Among these, it is impressive to see him publish two high-caliber research papers of distinct natures (one in physical design, and one in logic synthesis) at the same Design Automation Conference (DAC 2003). For such high-standard technical conferences, it is even hard to publish one paper since the acceptance rate is usually less than 20%. It is even more impressive that one of his papers was among a dozen nominees competing for the Best Paper Award. I truly believe that only a researcher with unusual ability and strong inclination of technical innovation could accomplish such remarkable results.

Dr. Hu joined Flexlogics Inc. after completion of his PhD. Flexlogics Inc. is a newly established semiconductor company building next-generation programmable devices. Dr. Hu continues to maintain his presence at top EDA conferences, the most recent example being his much acclaimed publication at last month's International Conference on Computer-Aided Design.

In conclusion, Dr. Hu has made extremely valuable research contributions to the field of Electronic Design Automation. I have no doubt that he will excel at his current research position in Flexlogics Inc. and make tremendous impact in this research field. I strongly support his immigrant visa petition as an outstanding researcher.

Sincerely,

Kaushik Roy
Professor of Electrical and
    Computer Engineering
University Faculty Scholar
Email: kaushik@ecn.purdue.edu



UNIVERSITY OF MICHIGAN
COLLEGE OF ENGINEERING
ELECTRICAL ENGINEERING & COMPUTER SCIENCE

1301 BEAL AVE.
ANN ARBOR, MI 48109-2122
734 764-2390  FAX 734 763-1503

*Markov*

To: U.S. Citizenship and Immigration Services
    Department of Homeland Security

RE: Letter of support for Dr. Bo Hu's petition for Permanent Residency.

November 30, 2004

Dear Officer:

        This letter is offered in support of Dr. Bo Hu's petition for Permanent Residency in the United States of America under the Outstanding Researcher category.

        I believe I am qualified to comment on the qualifications of Dr. Hu by virtue of my experience and knowledge in Dr. Hu's field of specialization – Electronic Design Automation (EDA) and particularly Integrated Circuit Layout. I hold a Ph.D. degree in Computer Science from UCLA and am currently employed as Assistant Professor of Electrical Engineering and Computer Science at the University of Michigan Ann Arbor. I am currently serving on program committees of the top four conferences in my field, and this involves regular reviews of other scientists' work for inclusion into conference programs. My own research is funded by the National Science Foundation (NSF), the Defense Advance Projects Agency (DARPA), the Semiconductor Industry Association (SIA), the Association for Computing Machinery (ACM), IBM and Intel. In 2004, I received the ACM SIGDA Outstanding New Faculty Award and the Donald O. Pederson ``paper-of-the-year'' award. A copy of my current resume is enclosed.

        I came to know Dr. Hu in 2002 when he published an excellent paper at the International Conference on Computer-Aided Design (ICCAD). In that paper, he proposed a novel technique to improve the wiring in computer chips by decreasing wire congestion – an increasingly important issue for leading-edge electronic devices. Since then, I noticed Dr. Hu's name as an author at almost all major international conferences in the Electronic Design Automation field, and attended his presentations. Within the last three years, he has published at least ten strong papers at highly-competitive conferences (DAC, ICCAD, ISPD), thus clearly proving his exceptional ability to conduct innovative research.   Much of Dr. Hu's research is in layout of large-scale VLSI circuits, which are routinely used in cars, consumer electronics, industrial robots, as well as aerospace and military systems. These circuits are rapidly growing and in the next few years will contain a billion transistors connected by miles of internal wiring --- all in an area less than a square inch. To design competitive electronics, the US semiconductor industry will need new circuit layout algorithms to automatically arrange all transistors and wires on

the chip so as to ensure adequate circuit speed, long battery life and other design objectives. Such optimization is widely known to be difficult, and many objectives appear in conflict with each other, requiring painstaking trade-offs. In this context, Dr. Hu invented a series of novel techniques to achieve competitive trade-offs. One of them was mentioned earlier and optimizes on-chip wire congestion without seriously affecting other parameters. Another technique is the "addition of fixed-points" which was a part of Dr. Hu's state-of-the-art algorithm for circuit placement. The significance of this technique has been reconfirmed by its adoption in the work (from another group) that won the best paper award at the International Symposium on Physical Design (ISPD) in 2004. Dr. Hu also published a series of new algorithms that proved effective in wire-length prediction, wire-length minimization, timing optimization, and fine-granularity circuit clustering.

In addition to being an expert in VLSI circuit layout, Dr. Hu also accomplished significant research result in logic synthesis – another major area of Electronic Design Automation. At this young age, it is rare for researchers to excel in both areas. Dr. Hu's high level of achievement can be seen in the nomination of his paper "Gain-based technology mapping for discrete-size libraries" for the best paper award at the Design Automation Conference in 2003 - only 14 out of 628 submissions were given this honor.

Without doubt, Dr. Hu is a truly outstanding researcher in electronic design automation, committed to improving the state of the art in design technologies. Given the strategic value of the electronics industry to the Univtes States, it is in the United States' interest to retain a researcher of such a high caliber. Therefore I urge your favorable consideration of Dr. Bo Hu's petition for Permanent Residency in the United States.

Nov 29, 2004

Dr. Igor Markov
The University of Michigan
Department of EECS
1301 Beal Ave.
Ann Arbor, MI 48109-2122
Phone: (734) 936-7829



COLLEGE OF ENGINEERING

THE UNIVERSITY OF TEXAS AT AUSTIN

*Department of Electrical and Computer Engineering · Engineering Science Building · Austin, Texas 78712-0240*
*(512) 471-6179 · FAX (512) 471-5532*

To: Immigration and Naturalization Service
   Department of Homeland Security


RE: Recommendation for Dr. Bo Hu's petition for Permanent Residency.

December 8, 2004

Dear Sir/Madam:

It is my pleasure to write this letter in support of Flexlogics petition to US Citizenship and Immigration Services on behalf of Dr. Bo Hu for classification as an outstanding researcher.

I believe I am qualified to comment on the qualifications of Dr. Hu. I am currently a tenure-track faculty member at the Department of Electrical and Computer Engineering, University of Texas at Austin. I have published over 30 technical papers, with 6 U.S. patents issued/pending. I am a Technical Program Committee (TPC) member of many top conferences in the field of electronic design automation (EDA), such as International Conference on Computer Aided Design (ICCAD), International Symposium on Physical Design (ISPD), and Asian and South Pacific Design Automation Conference (ASPDAC). I received a Best Paper Award from SRC (Semiconductor Research Corporation, the US research consortium of semiconductor industry) in 1998, SRC Inventor Recognition Award in 2000, and IBM Faculty Award in 2004.

In the following, I will start with the brief introduction of the research field Dr. Hu is working on, namely, Electronic Design Automation. I will describe Dr. Hu's original work and its significance to this field.

Electronic Design Automation (EDA) resides in computer engineering and it researches on all the aspects of computer-aided design for the semiconductor industry. The major components of Electronic Design Automation include high-level synthesis, logic synthesis, physical design, verification and manufacturing. Modern semiconductor technology has reached a level where the design and manufacturing of a chip is impossible without the aid of automated software. This software implements the latest research results on EDA.

Dr. Hu's major research areas are physical design and logic synthesis. He has accomplished significant results in both areas. I know about him through his technical presentations on the Design Automation Conference (DAC), the most prestigious technical conference in the EDA field. This conference attracts worldwide researchers

every year and represents the highest research level in this field. In DAC 2003, Dr. Hu has published two technical papers on physical design and logic synthesis respectively. Considering the strict paper-selection process, it represents a remarkable research achievement. In the paper on physical design, Dr. Hu presented a novel metric to predict the on-chip wire length. Based on this metric, he proposed a fine-granularity clustering algorithm to dramatically improve the efficiency of existing circuit placement algorithms in physical design. In his other paper on logic synthesis, Dr. Hu invented a breakthrough technology-mapping algorithm. His algorithm creates a higher-level abstraction of the circuit library, and by using this library abstraction, his algorithm finds a better implementation of the circuit. It is worth mentioning that this paper was selected to compete for the Best Paper reward of DAC.

Dr. Hu is a globally recognized expert in the Very Large Scale Integrated Circuit (VLSI) placement field. Placement is one of the most important and also difficult problems in VLSI physical design. The performance of the designed chip heavily depends on the quality of the placement result. Due to its significance, placement algorithms have been under intense research in recent years. Worldwide researchers from Europe, Asia, and the US are competing for the placement algorithm leadership. Under such fierce competition, Dr. Hu has gained his reputation by his remarkable achievement. He has published a lot of papers on placement in top EDA conferences. He proposed several original and effective placement algorithm innovations including fine-granularity clustering, fixed-point addition, multi-objective placement migration, etc. These algorithms are widely regarded as state-of-the-art. Because of his outstanding research achievements, I invited him to participate in the placement algorithm contest at International Symposium on Physical Design 2005, which I serve as the Publicity Chair. I would like to emphasize that only the researchers who have made significant impact in this field are invited to participate in this event. Dr. Hu is definitely one of them.

Without doubt, Dr. Hu is a truly outstanding researcher who is consistently producing innovative research works. I am sure that he will continue to contribute to the research community and the US semiconductor industry. Therefore, I strongly recommend his immigration petition as outstanding researcher without any reservation. Please feel free to contact me if you have any questions.

Sincerely,

David Z. Pan, Ph.D.
Assistant Professor
Director, Design Automation Laboratory

# UNIVERSITY OF ILLINOIS
## AT CHICAGO

Department of Computer Science (MC 152)
College of Engineering
1120 Science and Engineering Offices
851 South Morgan Street
Chicago, Illinois 60607-7053

To: Immigration and Naturalization Service
Department of Homeland Security

RE: Recommendation for Dr. Bo Hu's petition for Permanent Residency.

December, 2004

To whom it may concern:

It is my pleasure to write this letter in support of a petition by Flexlogics Corporation for classification of Bo Hu, Ph.D. as an outstanding researcher.

I believe I am qualified to comment on the qualifications of Dr. Hu. I am currently an associate professor at the University of Illinois at Chicago (UIC). At UIC I conduct research in the field of *Electronic Design Automation* – Dr. Hu's area of expertise. I received the Ph.D. degree in 1996 from UC San Diego after which I spent 1 year at UC Berkeley as a post-doctoral researcher. In 1997 I joined UIC as an assistant professor and am now an associate professor. Through my work on program committees as an associate editor of *IEEE Transactions on Computer Aided Design of Electronic Sytems*, as well as my own research, I am very familiar with the state of the art in EDA. Additionally, my group has done quite a bit of work in placement which is one of Dr. Hu's areas of expertise and as such I am very familiar with his work in particular. Thus, I believe I am in a good position to judge Dr. Hu's technical abilities.

I have found Dr. Hu to be an outstanding researcher. I know about him due to his consistently innovative research work in VLSI (Very Large Scale Integrated circuits)

## UIC

placement field. As 90 nanometer semiconductor process technology starts to merge into the mainstream manufacture of high-end Integrated Circuits (ICs), the demand for better-quality Electrical Design Automation (EDA) algorithms, particularly placement algorithms, grows dramatically. The reason is that VLSI chips like those in cell phones, cars, consumer electronics are becoming more functionally complex, and consequently larger than ever before. As a result, the challenge posed on VLSI placer is how to efficiently determine the locations for millions of circuit objects under multi-dimensiona; constraints.

In his research on placement, Dr. Hu has proposed a variety of practical solutions to overcome the algorithmic difficulty of the placement problem. First, Dr. Hu developed a fine-grained clustering algorithm to accelerate the placement process while maintaining a consistent placement quality. This has high practical importance since turnaround time for large designs is a crucial bottleneck in getting products to market. Second, Dr. Hu introduced a generalized quadratic placement model by which effectively eliminates an instability in previous state-of-art quadratic placement algorithm. This work has already had significant impact on both other academic and industry work. Dr. Hu also invented an incremental placement approach to optimize simultaneously a circuit's routability, performance, and power consumption – these are also crucial problems in the semiconductor industry. Some of his works were presented at top EDA conferences like Design Automation Conference (DAC), International Conference on Computer-Aided Design (ICCAD), and International Symposium on Physical Design (ISPD) and attracted a lot of attention from worldwide researchers in his field. Dr. Hu has published more than ten high-quality technical papers during his Ph.D. process. Considering the highly selective paper acceptance criteria of these conferences, it provides a solid proof of his unusual technical strength and unusual level of motivation for innovative research.

Due to his well-recognized expertise in VLSI physical design field, I invited him to review other researchers' work for IEEE Transaction on Computer-Aided Design, the top journal in VLSI CAD field. I was impressed by his insightful comments and valuable suggestions that were adopted by the original authors to improve the paper. Dr. Hu has also been actively involved in the reviewing process of top EDA conferences like DAC, ICCAD, and ISPD.

The United States has been the worldwide leader in semiconductor design and manufacture. This position is in no small part due to the dominant position it holds in design automation field. Dr. Hu has made significant impact in this field. Through his original research work, he has earned worldwide recognition for his ability of technical innovation. I am confident that he will continue to contribute to the technology advance in this field given that he is granted with permanent resident of the United States. So I strongly support the immigration petition on his behalf for the classification under outstanding researcher category.

John Lillis
Associate Professor



## State University of New York

DEPARTMENT OF COMPUTER SCIENCE
THOMAS J. WATSON SCHOOL OF ENGINEERING
AND APPLIED SCIENCE

PO Box 6000
Binghamton, New York 13902-6000
607-777-4802

Patrick H. Madden, PhD
Associate Professor of Computer Science
SUNY Binghamton
P. O. Box 6000
Binghamton, NY 13902
(011-81-93) 695-3828
pmadden@cs.binghamton.edu

January 17, 2005

To Whom It May Concern:

I'm writing this letter on behalf of Dr. Bo Hu, who is applying for a green card. I am currently an associate professor of computer science at Binghamton University, and my main field of research is integrated circuit physical design. Dr. Hu's PhD work falls into my field of expertise, and I would strongly recommend that a green card be granted.

For the past ten years, my primary focus has been on physical design; this is an area of active research, and critical to the the economic health of the semiconductor industry. As a senior researcher in this area, an organizer of major conferences, and a reviewer of technical papers in top conferences and journals, I am familiar with the state of the art. Dr. Hu's work has been consistantly interesting and innovative; I have been quite impressed.

Some of Dr. Hu's recent work that stands out includes a technique for adding fixed points, for use in analytic placement, and a gain based technology mapping technique (which was nominated as a best paper in the fields most competative conference). Dr. Hu's PhD thesis was on multilevel VLSI placement; this is squarely in my field of expertise, and work that I feel is of extremely high quality.

I have no hesitation in recommending Dr. Hu, who is an excellent researcher from a highly respected group. If you have any questions, please feel free to contact me; as I am currently on sabbatical, performing research at the University of Kitakyushu in Japan; the easiest means of contact is through email.

Sincerely,

Patrick H. Madden

# EXHIBIT B

# INTERNATIONAL SYMPOSIUM ON PHYSICAL DESIGN

**ISPD 2✳✳5**

www.ispd.cc  San Francisco, April 3-6

## PLACEMENT CONTEST

## *2nd Place*

## mFar

presented to

### BO HU, YUE ZENG, MARGARET MAREK-SADOWSKA

### UCSB

Patrick Groeneveld
General Chair ISPD 2005

Lou K. Scheffer
Program Chair ISPD 2005

# EXHIBIT C

mala fide applicants is a matter of chance. In 2002, incomplete screening led a USCIS adjudicator to approve naturalization for a member of a terrorist group.[29] Though there are few reports of USCIS approving benefits for the mala fide, incomplete checks present a security vulnerability that USCIS should address through targeted improvements to management controls on check completion.

## USCIS is implementing solutions to complete stalled cases

USCIS has an established structure for handling cases with security check hits and addressing national security, public safety, and fraud concerns. However, for a fraction of cases, slow, inconclusive, or legally inapplicable security check results can cause application processing to stall for months or even years. These delays can interfere with USCIS' concluding national security and public safety hits with timely denials or referrals to law enforcement. In addition, stalled cases decrease operational efficiency by reducing productivity and contributing to hundreds of lawsuits against USCIS. USCIS is pursuing several solutions to mitigate these effects and close stalled cases.

Staff described four primary ways that security checks could stall processing on a case:

- **Pending FBI name checks**. Unlike other USCIS checks that return results within a few days at most, the FBI name check takes more than a month to complete for six percent of submissions. For one percent, the FBI takes more than six months to compile the hit information and verify that the initial hit matches the identity of the applicant. In December 2002, USCIS (then INS) resubmitted 2.4 million applicant names for expanded checks,[30] almost double the number USCIS typically submits in a year's time. As of February 2005, USCIS reported 171,428 FBI name checks pending, including approximately 8,500 remaining from the December 2002 rerun. USCIS may pay the FBI double to "expedite" up to a few hundred FBI name checks per month. USCIS restricts these requests to certain cases, such as when the alien is about to become ineligible due to age, the applicant files writ of mandamus lawsuits to compel USCIS to complete adjudication,

---

[29] *Review of the Circumstances Surrounding the Naturalization of an Alien Known to be an Associate of a Terrorist Organization*, INS Office of Internal Audit, December 13, 2002.
[30] Ibid. In response to an incident that involved processing benefits for a member of a terrorist group, INS added searches of the FBI's reference file to searches of the main investigation file.